[Civ. No. 47847. First Dist., Div. One. June 17, 1982.]

WILLIAM J. RICARD, Plaintiff and Appellant, v.
PACIFIC INDEMNITY COMPANY et al., Defendants and
Respondents.

COUNSEL

Charles W. Robertson and Robertson, Needham & Silverthorne for Plaintiff and Appellant.

David W. Gordon and Bronson, Bronson & McKinnon for Defendants and Respondents.

C. Gordon Taylor as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

GRODIN, J.*—William Ricard appeals from a judgment dismissing his second amended complaint against Pacific Indemnity Company, the workers' compensation insurance carrier for his former employer, and two of its employees. The complaint contained two counts: the first, against Pacific alone, alleged that the insurer had intentionally breached its duty to deal with appellant fairly and in good faith; the second, against Pacific and two of its employees, alleged intentional infliction of emotional distress. The trial court sustained defendants' demurrer to the first count on the basis that it failed to allege facts sufficient to remove the matter from the exclusive jurisdiction of the Workers' Compensation Appeals Board (WCAB), and to the second count on the basis that it failed to allege facts constituting a cause of action. Ricard was given opportunity to amend, but failed to do so, and the dismissal followed.

We summarize the allegations of the complaint, beginning with count one. In September 1969, Ricard sustained an injury to his back in the course of his employment by Pacific's insured in Berkeley, California. He was incapacitated for several weeks following the injury, and received medical care and treatment from an orthopedic surgeon who advised him that his disability was chronic, and that he would have recurrences for the rest of his life. Pacific paid for the care and treatment, and assured him that he was entitled to receive all future medical care reasonably required to cure or relieve him from the effects of this accident, and that it was not necessary for him to file an application with the WCAB.

In November 1969, Ricard moved to the Washington, D.C. area where he has resided to the present time. During that month, after he moved, he experienced a recurrence of pain and discomfort related to the injury, and received medical care and treatment from a local orthopedic surgeon. Pacific paid for those expenses. In March 1971, he again suffered a recurrence, and was incapacitated for several weeks. Again he received medical care and treatment, and again Pacific paid.

*Assigned by the Chairperson of the Judicial Council.

In December 1975 and January 1976, Ricard was again incapacitated for several weeks as a result of pain and discomfort related to his 1969 injury, and was treated by the orthopedic surgeon who treated him in 1971. That physician in January 1976 sent his bill to Pacific, as before, but this time Pacific "intentionally ignored said report and billing." The physician sent copies of his report and billing to Pacific on March 11 and March 24, and again Pacific "intentionally ignored" them. During the period from March 24, 1976, through August 1, 1976, Ricard "repeatedly" made long distance calls to Pacific's San Francisco office inquiring about the payment of the physician's bill, but his inquiries were "constantly put off by Pacific in phone conversations by intentionally false representations that there was no problem concerning his claim, when in fact Pacific did not intend to investigate, process, or pay his claim."

Finally, on August 23, 1976, Pacific wrote a letter to the physician referring to his report that Ricard "has had gradual increase of back pain over the past couple of weeks," and stating, "[w]e fail to see how this could be related to his industrial incident of September 30, 1969 and for that reason we will be unable to make payment on your bill." The letter apologized for the belated reply, stating, "we just recently located Mr. Ricard's file."

Ricard, who received a copy of Pacific's letter, called the writer on August 26, 1976, and the writer accused Ricard and his physician "of trying to put something over on Pacific."

On August 26, 1976, Ricard wrote Pacific advising them of the great emotional distress he was experiencing by reason of their refusal to pay his claim, and of his fear and worry that Pacific was intentionally denying the claim as part of a scheme to avoid its obligation of furnishing future medical care. In addition, Ricard's physician wrote Pacific stating that the care he had given was related to the industrial injury.

Ricard arranged for an attorney in San Francisco to contact Pacific's claims manager for the purpose of seeing that Ricard received a response to his August 26, 1976, letter containing "appropriate answers" to his inquiries. Pacific's claims manager advised the attorney that he had no intention of interfering with the manner in which the claim was being handled.

Finally, as to the first count, it is alleged that Pacific's "refusal to properly investigate, process and communicate with plaintiff concerning his claim, and its denial of same, were intentional and willful breaches of its duty to exercise the highest degree of good faith, care, skill, and diligence for the protection of plaintiff's rights and were intentional and willful breaches of its duty of fair dealing owed to the plaintiff." As a result of this conduct, Ricard suffered "physical harm, shock and severe emotional distress," for which he sought compensatory damages. Alleging that Pacific's conduct was "oppressive and malicious," he sought punitive damages as well.

The second count, in addition to incorporating by reference the allegations against Pacific contained in the first count, alleges that the individual defendants, with knowledge and approval of Pacific's executive officers, "intentionally, willfully, knowingly and maliciously refused to properly investigate, process and communicate with plaintiff concerning his said claim for the purpose of wrongfully terminating Pacific's continuing obligation to furnish medical care in the future to plaintiff for his chronic industrial injury." The conduct of all defendants is alleged to be "outrageous and done with the intent, or in reckless disregard of the probability, of causing severe emotional distress to plaintiff." The complaint seeks recovery of both compensatory and punitive damages on the basis of the second count as well.

At the time this matter was adjudicated, there was at the least substantial doubt, even outside the worker's compensation context, whether an injured person could maintain an action against an insurance carrier for violation of the implied covenant of good faith and fair dealing. (See *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941 [132 Cal.Rptr. 424, 553 P.2d 584] (insurer's duty to settle runs to the insured, and not to the injured claimant); *Austero* v. *National Cas. Co.* (1976) 62 Cal. App.3d 511 [133 Cal.Rptr. 107] (wife of disabled insured, who was not a party to disability insurance contract, and was not an expressly named beneficiary, could not maintain action against carrier for bad faith investigation and unreasonable denial of claim); cf. *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1042 [143 Cal.Rptr. 415] (distinguishing situation where plaintiff is additional insured).)

Since that time, the Supreme Court decided *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], holding that a person who is injured by the alleged negligence of

the insured may sue the negligent party's insurer for certain violations of section 790.03 of the Insurance Code, which prohibits insurers from engaging in enumerated unfair claims settlement practices, though the third party's suit may not be brought until the liability of the insured is first determined. Distinguishing *Murphy v. Allstate Ins. Co., supra*, 17 Cal.3d 937, the court observed that plaintiff "does not seek to rely upon the violation of the insurer's duty to its insured to settle plaintiff's claim. Rather, she relies upon the insurer's duty owed to her as a claimant under subdivisions (h)(5) and (h)(14) of section 790.03, a duty created by those statutory provisions and owed directly to plaintiff as a claimant." (23 Cal.3d at p. 890.)

Ricard, on appeal, has expanded his view of the case to embrace *Royal Globe*; while continuing to assert his common law good faith and fair dealing theory, he now argues that his complaint was in any event sufficient to state a cause of action under Insurance Code section 790.03, subdivision (h), and specifically subsections (2), (4), (5) and (13).[1] Pacific continues to oppose Ricard's common law theory on the basis of *Murphy, supra*, 17 Cal.3d 937, but argues principally that the maintenance of a civil action based on the facts pleaded is, on any theory, barred by the exclusivity provisions of the workers' compensation act. Pacific also contends that if Ricard's action is not barred it is at least premature, in light of the *Royal Globe* requirement that a claimant's action against an insurer await the outcome of his action against the insured. These contentions frame the issues on appeal.

 We begin our analysis with the exclusivity question, for we consider it dispositive on the facts of this case.

Labor Code section 3600 states in pertinent part that liability for compensation provided by the workers' compensation act is "in lieu of any other liability whatsoever," and section 3601 states: "Where the

---

[1]The portion of the statute relied on by appellant provides: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. . . . (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: . . . (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. . . . (4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured. (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. . . . (13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement."

conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is ... the exclusive remedy for injury or death of an employee against the employer" with certain exceptions. And, while an employee's claim or right of action for damages proximately resulting from such injury or death "against any person other than the employer" is not barred by his claim for compensation under the act (Lab. Code, § 3852), the term "employer" is defined in section 3850, subdivision (b) to include the insurer. Finally, section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent." These sections form the statutory foundation for Pacific's argument that Ricard's action against it on either theory is barred.

Ricard, seeking to avoid exclusivity, relies principally upon *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063], in which an applicant for workers' compensation benefits was allegedly enticed by an agent for the insurance carrier, in the guise of friendship, to Disneyland, where he inveigled her into undertaking various activities of which his associate took motion pictures. The court rejected the applicant's contention that the insurer became a third party by negligently failing to control the investigation, reasoning that "the *nature* of the insurer's role is not changed merely because its usual functions may have been performed negligently," and that a contrary holding "might significantly deter insurance companies from providing workmen's compensation insurance and seriously impair a compensation scheme designed for the benefit of the workman." (*Id.*, at p. 628.) But the court held that the applicant could maintain an action against the insurer for its intentional torts of assault and battery and infliction of emotional distress, stating: "[W]e are unable to conclude that a compensation insurer remains within its proper role as such, when, as in the instant case, through its agents or others employed by it, such insurer intentionally embarks upon a deceitful course of conduct in its investigations which causes injury to the subject of the investigation.... A deceitful investigation, in place of an honest one, frustrates the laudable objectives of the workmen's compensation law. Permitting the employee to maintain an action at law for the insurer's intentional torts will subserve these objectives but at the same time will not discourage the insurer from fulfilling its proper role in the compensation scheme." (*Id.*, at p. 630.) Ricard argues that his action against Pacific

falls within the category of intentional torts for which, under *Unruh*, a carrier may be sued.

We are aware of one relevant case decided since *Unruh*, and the decision in that case is not helpful to Ricard. In *Everfield* v. *State Comp. Ins. Fund* (1981) 115 Cal.App.3d 15 [171 Cal.Rptr. 164], the applicant, having obtained an award from the WCAB, sued the carrier alleging consistent delay in payments of compensation, arbitrary reduction in the periodic amount paid, and disregard of a subpoena duces tecum, all of which conduct was claimed to be intentional, deceitful, fraudulent, and in bad faith with intent to injure. The court held that the acts alleged were in themselves "not fraudulent, deceitful, outrageous, perfidious or so extreme or abnormal as to fit in the class of misconduct considered in *Unruh*" (*id.*, at p. 19), but rather constituted "no more than ... a nonperformance of a statutory duty to provide temporary disability benefits under the Labor Code. [Citations.] Such a complaint which does not contain factual allegations identifying the particular acts or circumstances which distinguish the tort of outrageous conduct from an ordinary nonperformance of a statutory duty owed by respondent to appellant is insufficient. [Citation.]" (*Id.*, at p. 20.)

This case is arguably distinguishable from *Everfield*, in that Ricard has described the conduct of which he complains in somewhat greater detail, and he has included allegations which, he contends, focus upon the impropriety of the manner in which Pacific handled his claim, rather than upon its failure to make payment. We do not, however, regard these distinctions as sufficient to bring Ricard's case within the *Unruh* exception to the principle of exclusivity. The carrier in *Unruh*, in the course of a deceitful investigation, through an agent who established an ostensibly romantic relationship with the applicant, engaged in affirmative conduct which was independently tortious. The conduct was of such a nature as to be readily and objectively identifiable, and thus distinguishable from the normal investigation expected of a workers' compensation carrier. Here, by contrast, no relationship is alleged between plaintiff and defendant other than that of claimant and insurer. The insurance carrier committed no affirmative conduct which took it outside its role as an insurer so as to invest itself with a "dual personality" subject to liability at law. (*Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 476, fn. 10 [165 Cal.Rptr. 858, 612 P.2d 948]; see also *Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d

268, 275 [179 Cal.Rptr. 30, 637 P.2d 266].) The carrier's conduct, on its face, appears to be nothing more than the rejection of what it considers to be an improper claim, accompanied by what might be characterized as negligent delay. The carrier's conduct becomes additionally improper only through Ricard's allegations as to the state of mind which accompanied it, and even on that basis it does not reach the level of reprehensibility condemned in *Unruh.*

The Supreme Court in *Unruh,* explaining the rule that negligent performance of an insurer's usual functions do not provide a basis for an independent lawsuit, took note of Justice Tobriner's observation as an appellate justice in *Noe* v. *Travelers Ins. Co.* (1959) 172 Cal.App.2d 731, 737 [342 P.2d 976]: "[W]e must point out that if delay in medical service attributable to a carrier could give rise to independent third party court actions, the system of workmen's compensation could be subjected to a process of partial disintegration. . . . The uniform and exclusive application of the law would become honeycombed with independent and conflicting rulings of the courts. The objective of the Legislature and the whole pattern of workmen's compensation could thereby be partially nullified." (*Unruh, supra,* 7 Cal.3d at p. 628.)

We recognize, of course, a distinction between negligent and intentional misconduct, and we are not so naive as to believe that insurance carriers do not on occasion frustrate the objectives of the workers' compensation statute by intentionally dragging their feet. It may be that something more than the 10 percent penalty provided by the statute is required in order to deter such conduct. But to permit an applicant to maintain an action against the carrier on the basis of allegations such as these, particularly without a showing that WCAB remedies have been exhausted,[2] would pose a threat of the sort identified by Justice Tobriner in *Noe.* We conclude that the demurrer to the first count was properly sustained.[3]

---

[2] In a petition for rehearing, Ricard for the first time requests that we take judicial notice of an application filed on his behalf with the WCAB on May 4, 1979. We are not advised as to the outcome.

[3] We have examined numerous decisions from other states which the parties, at the court's invitation, have been kind enough to supply and discuss. Upon analysis, we agree with appellant's observation in his supplemental brief that the statutory schemes and judicial interpretations among the various states are so diverse on this point as to render comparison difficult, if not impossible.

We find also no error in the trial court's sustaining of Pacific's demurrer to the second count, for failure to allege facts sufficient to state a cause of action for intentional infliction of emotional distress. ■ One element of the tort is "outrageous conduct," and in order to satisfy that element a defendant's conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975].) ■ We believe the trial court was justified in concluding, as a matter of law, that defendant's conduct, as pleaded, could not be deemed "outrageous" within that definition. (*Fuentes v. Perez* (1977) 66 Cal.App.3d 163 [136 Cal.Rptr. 275]; cf. *Little v. Stuyvesant Life Ins. Co.* (1977) 67 Cal.App.3d 451 [136 Cal.Rptr. 653]; *Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498 [169 Cal.Rptr. 478].) The trial court's ruling on the second count was also appropriate on grounds of exclusivity under the workers' compensation act, for the reasons discussed earlier in this opinion.

Affirmed.

Racanelli, P. J., and Goff, J.,* concurred.

A petition for a rehearing was denied July 9, 1982, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied August 11, 1982.

---

*Assigned by the Chairperson of the Judicial Council.