[No. B172638. Second Dist., Div. One. Aug. 31, 2005.]

PHILIP COLEMAN et al., Plaintiffs and Appellants, v.
REPUBLIC INDEMNITY INSURANCE COMPANY OF CALIFORNIA et
al., Defendants and Respondents.

## COUNSEL

Mathon & Rosensweig, William Rosensweig and Michelle Cooper for Plaintiffs and Appellants.

Gilbert, Kelly, Crowley & Jennett, Barbara J. Mandell and Teresa M. Wilson for Defendants and Respondents.

## OPINION

**MALLANO, Acting P. J.**—In *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal*), the Supreme Court held that a third party claimant—an individual who is injured by the alleged negligence of an insured party—does not have a private right of action against the insurer for unfair settlement practices. This case presents the question, one of first impression in California, of whether that rule applies where the third party claimant is insured by the same insurer as the other party.

We hold that *Moradi-Shalal* bars such an action because the coincidental fact that plaintiffs are insured by the same insurer as the other party does not change plaintiffs' position as strangers to the other party's insurance policy and as adversaries to the insurer. Thus, the insurer owes no duty of good faith and fair dealing to plaintiffs in settling their claims against the other party.

We also conclude that where there is no duty of good faith and fair dealing, there is no duty that would give rise to a claim of negligent infliction of emotional distress. Finally, we determine that the insurer's conduct here does not reach the level of outrageousness necessary to support a cause of action for intentional infliction of emotional distress.

## I

### BACKGROUND[1]

On September 14, 2001, plaintiffs Philip and Robin Coleman were involved in a traffic accident with Jesus Gonzalez. At the time, the Colemans were insured by Republic Indemnity Insurance Company of California

---

[1] For purposes of appellate review of the order sustaining the demurrer, we accept as true all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

(Republic) and Gonzalez was insured by Infinity Insurance Company (Infinity). Infinity is the parent company of Republic and controls over 10 percent of the voting securities in Republic. The two companies share management and a common claims processing office.

In March 2002, Infinity paid the Colemans' property damage claim against Gonzalez. On July 18, 2002, Infinity sent a letter to the Colemans informing them that the statute of limitations for their personal injury claim would run on September 14, 2002.

On August 20, 2002, Infinity's adjuster told the Colemans that as long as they submitted their medical records and authorization forms prior to September 14, their claim would be processed and settled regardless of the statute of limitations. They promptly submitted all requested materials to the adjuster. In a phone call on August 26, the adjuster told the Colemans that with all necessary documentation now in hand, Infinity would complete the processing and settlement of their personal injury claim against Gonzalez. He also told them that because "the matter was straightforward," they did not need an attorney to represent them.

The Colemans called the adjuster again in early October 2002 to check on the status of the settlement. He apologized for the delay and told them that the proposed settlement had been sent to Infinity's underwriters for approval. He suggested that the Colemans call him back in about a week. They called back as instructed but had difficulty getting in touch with the adjuster, who did not return their calls. They reached him on October 16, 2002. In that conversation, the adjuster referred the Colemans to his supervisor, who informed them that the statute of limitations had run and that Infinity would not pay their claim. This statement directly contradicted the assurances given by the adjuster on August 20 that their claim would be processed and settled regardless of the statute of limitations. The manner in which their claim was handled caused the Colemans severe emotional distress, mental suffering, sleeplessness, and humiliation.

On March 26, 2003, the Colemans filed this action in Los Angeles Superior Court against Gonzalez and his insurer, Infinity, and the Colemans' own insurer, Republic. The complaint alleged a cause of action for negligence against Gonzalez, and causes of action for fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing against both Infinity and Republic.

Infinity and Republic demurred. The trial court overruled the demurrers to the negligence cause of action because only Gonzalez was named in that count, but sustained Infinity and Republic's demurrers to the remaining causes of action, with leave to amend, determining that the Colemans had not pleaded facts sufficient to show fraud, extreme and outrageous conduct, severe emotional distress, or unreasonable denial of the claim.

The Colemans filed their first amended complaint, essentially alleging the same facts and including the same causes of action, except the fraud claim, which they did not pursue. The parties stipulated to severing the negligence cause of action against Gonzalez.

Infinity and Republic again demurred. The trial court sustained the demurrer to the first amended complaint, without leave to amend, concluding under *Moradi-Shalal* that the Colemans could not bring an action for breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, or intentional infliction of emotional distress against the insurers because the Colemans were insured by Republic, not Infinity, they were third party claimants to benefits under Gonzalez's insurance policy and, under *Moradi-Shalal*, could not bring an action against Gonzalez's insurer for unfair settlement practices. The Colemans appealed.

## II

## DISCUSSION

█ The standard of review for an order sustaining a demurrer without leave to amend is de novo. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We exercise our independent judgment as to whether, as a matter of law, the Colemans' first amended complaint states a cause of action. (See *ibid.*)

The Colemans contend that Infinity and Republic, based on their affiliation, are corporate "alter egos" that should be treated as the same insurer. They rely on Insurance Code section 1215, subdivision (b) for the proposition that because Infinity allegedly owns over 10 percent of the voting securities in Republic, Infinity is presumed to control Republic and therefore the two companies are essentially the same entity.[2] We assume for the sake of

---

[2] The statute provides in pertinent part: "Control shall be presumed to exist if any person, directly or indirectly, owns, controls, holds with the power to vote, or holds proxies representing, more than 10 percent of the voting securities of any other person." (Ins. Code, § 1215, subd. (b).)

discussion that the Colemans' alter ego analysis is correct and hereafter refer to Infinity and Republic collectively as "the Insurer."

## A. *Implied Covenant of Good Faith and Fair Dealing*

As stated, the issue of whether an insurer owes a duty of good faith and fair dealing to a third party claimant whom it also insures, under an unrelated policy, is one of first impression in California. The Colemans contend that the Insurer owed them such a duty. We disagree.

### 1. *Moradi-Shalal*

In *Moradi-Shalal, supra,* 46 Cal.3d 287, the California Supreme Court overruled its holding in *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] (*Royal Globe*) that allowed third party claimants a private right of action against insurers for unfair settlement practices under the Unfair Insurance Practices Act (Ins. Code, § 790 et seq.). A third party claimant is " 'an individual who is injured by the alleged negligence of an insured' [citation]." (*Moradi-Shalal, supra,* 46 Cal.3d at p. 294.) The *Moradi-Shalal* court concluded that such suits by third party claimants against insurers were undesirable because of the "adverse social and economic consequences" discussed below. (*Id.* at p. 301.)

Such an action against insurers "promotes multiple litigation, because [*Royal Globe*'s] holding contemplates, indeed encourages, two lawsuits by the injured claimant: an initial suit against the insured, followed by a second suit against the insurer for bad faith refusal to settle. [Citation.] As a corollary, *Royal Globe* may tend to encourage unwarranted settlement demands by claimants, and to coerce inflated settlements by insurers seeking to avoid the cost of a second lawsuit and exposure to a bad faith action. [Citations.] [¶] . . . '. . . The public ultimately will be affected by the additional drain on judicial resources. Moreover, the public will indeed suffer from escalating costs of insurance coverage, a certain result of inflated settlement demands and costly litigation.' [Citation.] [¶] Other commentators agree that *Royal Globe*, and its allowance of a direct action against the insurer, may result in escalating insurance costs to the general public resulting from insurers' increased expenditures to fund coerced settlements, excessive jury awards and increased attorney fees. [Citations.] . . . [¶] . . . [A]nother unfortunate consequence of our holding in *Royal Globe* that insurers owe a direct duty to third party claimants: It tends to create a serious conflict of

interest for the insurer, who must not only protect the interests of its insured, but also must safeguard its own interests from the adverse claims of the third party claimant. This conflict disrupts the settlement process and may disadvantage the insured. [Citations.]" (*Moradi-Shalal, supra,* 46 Cal.3d at pp. 301–302.)

The Colemans are " 'individual[s] who [were] injured by the alleged negligence of an insured,' " Gonzalez, and therefore are third party claimants. (*Moradi-Shalal, supra,* 46 Cal.3d at p. 294.) Nevertheless, they argue that because they are also insured by the Insurer, their case is an exception to the rule in *Moradi-Shalal* and a situation in which the Insurer owed them a duty of good faith and fair dealing in settling their claim against Gonzalez. Yet the Colemans' action still implicates the *Moradi-Shalal* court's policy concerns about multiple lawsuits, coercive settlement demands, judicial resources, increased costs of insurance, and the conflict of interest between an insurer and its other insured because it is still a third party action against an insurer. Here, we are called on to decide whether the Insurer's relationship with the Colemans, as holders of an unrelated insurance policy, outweighs those concerns.

## 2. *Cases from Other Jurisdictions*

The majority of other jurisdictions that have dealt with this issue have held that insurers do not owe a duty of good faith and fair dealing to third party claimants whom they also insure. In *Pixton v. State Farm* (Utah Ct.App. 1991) 809 P.2d 746 (*Pixton*), both drivers in a traffic accident were insured by State Farm under unrelated policies. One of the drivers, the plaintiff, alleged that the other driver's negligence caused the accident. The plaintiff made a first party claim for medical expenses under her own policy and a third party claim against the other driver for the cost of rehabilitation services. (*Id.* at p. 747.)

After State Farm paid the plaintiff's medical expenses under her own policy, it hired an independent rehabilitation company to evaluate her medical condition and estimate the cost of her rehabilitation. State Farm then offered to settle her third party claim, but, according to the plaintiff, refused to provide her with the results of the rehabilitation evaluation, which she deemed necessary to determine if the settlement offered was reasonable. The plaintiff eventually obtained the evaluation report and asserted State Farm had

mischaracterized some of the costs for her rehabilitation, resulting in the undervaluation of her third party claim. She then settled with the other driver and brought suit against State Farm for breach of contract, fraud, and breach of the implied covenant of good faith and fair dealing based on its alleged earlier refusal to disclose information to her and for its use of the same adjuster for both her first and her third party claims. (*Pixton, supra*, 809 P.2d at p. 747.)

The Court of Appeals of Utah affirmed the trial court's grant of summary judgment to State Farm, concluding that the insurer owed no duty of good faith and fair dealing to the plaintiff, because the other driver's insurance policy, and not her own, was at issue in the underlying action. (*Pixton, supra*, 809 P.2d at p. 749.)

The *Pixton* court explained: "[The plaintiff] has no relevant contractual relationship with State Farm. [The plaintiff] makes no claim that State Farm failed to perform any obligation under her no-fault insurance policy with State Farm. All [the plaintiff's] claims are grounded in her status as an injured claimant attempting to recover against State Farm as the insurer of the tortfeasor . . . . [The plaintiff] claims State Farm acted in bad faith by failing to properly settle her claim against [the tortfeasor but] all her first-party claims were settled to her satisfaction. . . . [¶] In sum, we are persuaded that there is no duty of good faith and fair dealing imposed upon an insurer running to a third-party claimant, such as [the plaintiff], seeking to recover against the company's insured. This conclusion is consistent with the commentators and the great majority of courts in other jurisdictions that have been confronted with the issue. . . . [¶] . . . [¶] [The plaintiff] attempts to distinguish her third-party claimant position claiming that she had a contractual relationship with State Farm under her no-fault policy. However, she does not challenge the settlement of her claim under that policy or articulate how State Farm breached any duty under her first-party contract with it." (*Pixton, supra*, 809 P.2d at pp. 749–750.)

Similarly, in *Martin v. State Farm Mut. Auto. Ins. Co.* (2004) 348 Ill.App.3d 846 [808 N.E.2d 47, 283 Ill.Dec. 497] (*Martin*), both drivers in a traffic accident were insured by State Farm under unrelated policies. The plaintiff filed a claim with State Farm against the other driver. Maintaining that State Farm "concealed the full extent of coverage to which plaintiffs were entitled [under the other driver's policy] by failing to disclose that they

were entitled to additional compensation for the diminished value of their vehicle," the plaintiff sued State Farm for breach of contract, fraud, breach of a voluntary undertaking and breach of a fiduciary duty. (*Id.* at p. 50.)

The trial court dismissed the suit for failure to state a cause of action. The Appellate Court of Illinois affirmed, observing that "courts have generally declined to recognize a special duty extending from the insurer to the third-party claimant even where the third-party claimant is also insured by the same insurer, the rationale being that the claimant remains in an adversarial position despite this coincidence." (*Martin, supra,* 808 N.E.2d at p. 51.)

The same result was reached in *Clinton v. State Farm Mutual Automobile Ins. Co.* (1964) 110 Ga.App. 417 [138 S.E.2d 687] (*Clinton*). Again, both parties involved in a traffic accident were covered by State Farm under unrelated policies. One driver, the plaintiff, sued the other driver for personal injuries. According to the plaintiff, State Farm's adjuster assured the plaintiff that "the company would 'take care of him' " and that he would receive a decent settlement; State Farm stalled, then told the plaintiff that the statute of limitations had run and his claim was barred. (*Id.* at p. 688.) The plaintiff sued State Farm for multifariousness and duplicity, Georgia's version of breach of the implied covenant of good faith and fair dealing.

The trial court sustained State Farm's general demurrer. The Court of Appeals of Georgia affirmed, concluding that the action must fail because State Farm was the agent of the other driver, not that of the plaintiff: "[T]he insurance company is the agent for the [other] *insured* in adjusting liability claims *against him* under his policy . . . . State Farm was the *agent of* [*the other insured*] in any negotiations that may have been had with [the plaintiff] looking to the adjustment of [the plaintiff's] claim against [the other insured] under [the other insured's] policy . . . . Consequently there was no principal-agent relationship between [the plaintiff] and State Farm . . . . [Citations.]" (*Clinton, supra,* 138 S.E.2d at p. 692.)

Courts in other jurisdictions have also determined that an insurer owes no duty of good faith and fair dealing to a third party claimant whom it also insures the Supreme Court of Wyoming (*Herrig v. Herrig* (Wyo. 1992) 844 P.2d 487), the Court of Appeals of Texas (*Caserotti v. State Farm Ins. Co.* (Tex.Ct.App. 1990) 791 S.W.2d 561), and the United States District Court for the District of South Carolina (*Myers v. State Farm Mut. Auto. Ins. Co.* (D.S.C. 1997) 950 F.Supp. 148).

We agree with these cases and apply them to the matter before us and conclude that the Colemans cannot maintain their action for breach of the implied covenant of good faith and fair dealing. The Colemans' own insurance policy was not related to their claim against Gonzalez and thus is not a "relevant contractual relationship" which would give rise to such an action. (*Pixton, supra*, 809 P.2d at p. 749.) The Colemans "[remained] in an adversarial position [toward the Insurer] despite [the] coincidence" of also being insured by the Insurer. (*Martin, supra*, 808 N.E.2d at p. 51.) Imposing a duty of good faith and fair dealing running from the Insurer to the Colemans would "create a serious conflict of interest for the insurer" by obligating it to safeguard both the Colemans' and Gonzalez's interests. (*Moradi-Shalal, supra*, 46 Cal.3d at p. 302.) "To extend that duty to third-party claimants would place the insurer in the untenable position of owing a duty of good faith to both the insured tortfeasor and his adversary." (*Martin, supra*, 808 N.E.2d at p. 51.)

The Colemans rely on *Rawlings v. Apodaca* (1986) 151 Ariz. 149 [726 P.2d 565] (*Rawlings*), a Supreme Court of Arizona case, for the proposition that an insurer owes a duty of good faith to a third party claimant whom it also insures. *Rawlings* is distinguishable because it involved a first party claim.

In *Rawlings*, a fire damaged the plaintiff's dairy farm. The plaintiff filed a claim for compensation under his own homeowners insurance policy. As part of the process of settling the plaintiff's first party claim, the insurer hired an investigator, who determined that the neighbor probably caused the fire and that the neighbor held a liability insurance policy with that same insurer. The neighbor's liability policy had significantly higher limits than the plaintiff's homeowners policy. When the plaintiff requested a copy of the investigation report, the insurer refused to release it and did not inform him that it was the neighbor's liability insurer; the insurer would have had to pay out under the neighbor's policy if the plaintiff had received this information. Eventually, the insurer paid the plaintiff the full limit of his own homeowners insurance policy and agreed to turn over the investigation report, if the plaintiff paid half its cost. He declined that offer, instead filing suit against the neighbor for negligently starting the fire and also against the insurer for breaching its duty of good faith and fair dealing by concealing that it also insured the neighbor, who the insurer knew probably caused the fire. (*Rawlings, supra*, 726 P.2d at p. 568.)

The trial court found for the plaintiff, awarding him compensatory and punitive damages against the insurer. The Court of Appeals reversed, holding that because the insurer had paid the plaintiff's claim without undue delay, it could not be held liable. (*Rawlings, supra,* 726 P.2d at p. 569.) The Supreme Court of Arizona reversed the Court of Appeals, holding that the insurer owed a duty of good faith to the plaintiff because "firmly established law indicates that the insurance contract between plaintiffs and [the insurer] included a covenant of good faith and fair dealing . . . . [¶] . . . [¶] [O]ne of the benefits that flow from the insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained or expose him to the catastrophe from which he sought protection. . . . [¶] . . . [¶] [T]he insured is entitled to expect that the insurer will be '*on his side*' at least to the extent of treating him honestly and fairly . . . . [Citation.]" (*Rawlings, supra,* 726 P.2d at pp. 570–571, italics added.)

We view *Rawlings* as a first party case and thus inapplicable to the Colemans' claim. The plaintiff in *Rawlings* had brought a claim under his own policy and the insurer had been acting as his agent. (*Rawlings, supra,* 726 P.2d at p. 568.) Thus, the Supreme Court of Arizona determined in *Rawlings* that the specific insurance policy at issue—that from which the duty of good faith arose—was the plaintiff's policy, stating: " '[T]he relevant inquiry always will focus on the contract itself, to determine what the parties did agree to.' [Citation.]" (*Id.* at p. 570.)

But here, the Insurer never purported to act as an agent for the Colemans, nor did the Colemans bring their personal injury claim under their own insurance policy. We conclude, as did the *Pixton* court, that *Rawlings* is distinguishable because "*Rawlings* involved imposition of a tort-based duty in a first-party situation." (*Pixton, supra,* 809 P.2d at p. 751, fn. 2, citing *Hettwer v. Farmers Ins. Co. of Idaho* (1990) 118 Idaho 373 [797 P.2d 81].)

Although in *McCarter v. State Farm Mut. Auto. Ins. Co.* (1985) 130 Ill.App.3d 97 [473 N.E.2d 1015, 85 Ill.Dec. 416] the Third District of the Appellate Court of Illinois imposed a duty of good faith owed by insurers to third party claimants, another Illinois appellate court, the First District of the Appellate Court of Illinois, has recently concluded otherwise. *Martin* observed, "[T]he court in *McCarter* found, without any citation to authority or analysis, that the insurer owed the third-party claimant a duty of good faith and fair dealing . . . . [¶] . . . To the extent that *McCarter* expands [the] narrow exception to the rule in finding a duty of

good faith and fair dealing owed to the third-party claimant, we reject it . . . ." (*Martin, supra*, 808 N.E.2d at p. 53.) We agree with *Martin* and decline to follow *McCarter*.

■ In sum, we hold that an insurer owes no duty of good faith and fair dealing to a third party claimant—notwithstanding the coincidental fact that the insurer also insures the claimant—because the claimant, as a stranger to the insurance policy of the other insured, has no relevant contractual relationship with the insurer and remains in an adversarial position toward the insurer acting as the agent of it's other insured, and because nothing here outweighs the policy concerns of *Moradi-Shalal*.

### B. *Negligent Infliction of Emotional Distress*

■ The Colemans maintain that the Insurer's conduct gives rise to a cause of action for negligent infliction of emotional distress. We disagree. Such an action, like one of good faith and fair dealing, is predicated on a duty owed by the Insurer to the Colemans. "[D]amages for severe emotional distress may be recovered 'when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a special relationship between the two.' " (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 890 [2 Cal.Rptr.2d 79, 820 P.2d 181] (*Christensen*).)

"[P]ublic policy considerations are relevant in determining whether a particular plaintiff may recover damages for emotional distress. . . . [¶] '[I]n considering the existence of "duty" in a given case several factors require consideration including . . . "the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach . . . ." ' " (*Christensen, supra*, 54 Cal.3d at pp. 885–886.)

■ In *Taylor v. California State Auto. Assn. Inter-Ins. Bureau* (1987) 194 Cal.App.3d 1214 [240 Cal.Rptr. 107] (*Taylor*), the First District Court of Appeal determined that where the insurer owes no duty of good faith and fair dealing to a claimant, it also owes no duty giving rise to a claim of negligent infliction of emotional distress. There, the plaintiff, a pedestrian, was hit by a car driven negligently. According to the plaintiff, the driver's insurer did not pay all of the plaintiff's medical bills, even though the driver's liability was clear. The plaintiff then sued the insurer for negligent and intentional infliction of emotional distress and for unfair settlement practices under Insurance Code section 790.03.

The trial court granted summary judgment to the insurer, determining that the insurer owed no duty to the plaintiff. The Court of Appeal affirmed, concluding that "[the insurer] was entitled to summary judgment on the cause of action for negligent infliction of emotional distress since such a cause of action 'must be predicated on the existence of a duty of care and its breach.' [Citation.] We have determined above that [the insurer] has effectively negated the allegation of its duty under [Insurance Code] section 790.03 and [the plaintiff] claims no alternative basis for [the insurer's] duty to her." (*Taylor, supra*, 194 Cal.App.3d at p. 1223.) The *Taylor* court reasoned that if there was no duty of fair settlement owed to a third party claimant, then there was also no duty giving rise to a claim of negligent infliction of emotional distress, unless some alternative source for that duty could be shown.

In an attempt to avoid the holding in *Taylor*, the Colemans argue that their relationship with the Insurer is an "alternative source" of the Insurer's duty to them, but as we have discussed, that relationship was not relevant to the claim they brought against Gonzalez and is therefore not relevant to the duties the Insurer owed them. (See *Pixton, supra*, 809 P.2d 746.)

It would be anomalous to conclude that the insurer's conduct toward a third party claimant supported imposition of a duty of reasonable care, but not one of good faith, ultimately allowing the third party claimant to pursue the matter, notwithstanding the policy concerns discussed in part II.A., *ante*.

Thus, the Colemans fail to state a cause of action for negligent infliction of emotional distress.

## C. *Intentional Infliction of Emotional Distress*

Finally, the Colemans argue that the Insurer's conduct supports a cause of action for intentional infliction of emotional distress. Again, we disagree.

■ Liability for intentional infliction of emotional distress extends "only to conduct so extreme and outrageous 'as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 499, fn. 5 [86 Cal.Rptr. 88, 468 P.2d 216].)

■ The *Moradi-Shalal* court did not foreclose common law actions, stating that "the courts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on

such traditional theories as . . . infliction of emotional distress . . . ." (*Moradi-Shalal, supra,* 46 Cal.3d at pp. 304–305.) For example, such an action lies where an insurer sends harassing letters to the claimant and makes false accusations, putting the claimant in fear of unfounded litigation if the claimant does not drop the claim (*Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78]) or where an insurer's investigator engages in a romantic relationship with the claimant so that he could take photographs of her to compromise her workers' compensation claim (*Unruh v. Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063]).

But California courts have held that delay or denial of insurance claims is not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress. In *Lee v. Travelers Companies* (1988) 205 Cal.App.3d 691 [252 Cal.Rptr. 468], the plaintiffs, attorneys, alleged that their insurer engaged in statutory unfair insurance practices by refusing to settle with the plaintiffs in their suit against the attorneys for negligent misrepresentation. Citing *Moradi-Shalal's* recognition of common law remedies available against insurers, this District rejected the imposition of liability for intentional infliction of emotional distress based on statutory unfair settlement practices, concluding: "[I]t is well-settled that '[t]he failure to accept an offer of settlement or the violation of statutory duties under Insurance Code section 790.03 does not in itself constitute the type of outrageous conduct which will support a cause of action for intentional infliction of emotional distress. [Citations.]' [Citations.] Since plaintiffs have explicitly premised their intentional infliction of emotional distress count upon defendants' purported failure to 'fulfill[] their statutory duties . . .' and have not alleged with specificity any other acts '. . . so extreme as to exceed all bounds of that usually tolerated in a civilized community' [citation], the trial court's [sustaining of the insurer's demurrer] on that count was also correct." (*Lee, supra,* 205 Cal.App.3d at pp. 694–695; accord, *Schlauch v. Hartford Accident & Indemnity Co.* (1983) 146 Cal.App.3d 926, 936 [194 Cal.Rptr. 658]; see *Ricard v. Pacific Indemnity Co.* (1982) 132 Cal.App.3d 886, 895 [183 Cal.Rptr. 502].)

Because the Colemans' cause of action for intentional infliction of emotional distress is based solely on the statutory unfair settlement practices of "[m]isleading a claimant as to the applicable statute of limitations" (Ins. Code, § 790.03, subd. (h)(15)) and "[d]irectly advising a claimant not to obtain the services of an attorney" (*id.* at § 790.03, subd. (h)(14)), it must fail under the foregoing authorities.

## III

## DISPOSITION

The order of dismissal is affirmed. The parties are to bear their own costs of appeal.

Rothschild, J., concurred. Vogel, J., concurred in the judgment only.