[No. G035677. Fourth Dist., Div. Three. Mar. 23, 2007.]

EUGENE LEVY et al., Plaintiffs and Appellants, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(c) and 8.1110, this opinion is ordered published, with the exception of parts III.B., III.C., III.D., and III.E.

2

Counsel

Lawrence Walner and Associates, Lawrence Walner, Michael S. Hilicki; Fineman & Associates and Neil B. Fineman for Plaintiffs and Appellants.

Skadden, Arps, Slate, Meagher & Flom, Darrel J. Hieber, T. Jean Mooney; Robie & Matthai, James R. Robie and Steven S. Fleischman for Defendant and Respondent.

Opinion

ARONSON, J.—Plaintiffs Eugene Levy and Sharon Battle challenge the judgment entered after the trial court sustained defendant State Farm Mutual Automobile Insurance Company's (State Farm) demurrer to plaintiffs' fifth amended complaint without leave to amend, granted State Farm's motion to strike class action allegations without leave to amend, and granted defendant's motion to dismiss Battle on the grounds of forum non conveniens. Plaintiffs contend they have properly alleged both individual and class claims arising from State Farm's practice of omitting certain labor and material costs from its repair estimates, and using its own contracted repair shops in its survey to determine the prevailing competitive repair labor rates included in its estimates.

We conclude the trial court properly sustained State Farm's demurrers without leave to amend. State Farm's insurance policy obligated it to repair its insureds' vehicles to their preaccident condition. The fifth amended complaint fails to describe how following State Farm's repair estimates would not have restored Levy's or Battle's vehicles to their preaccident condition. Instead, the complaint alleges State Farm's repair estimates failed to include items required by industry repair standards. California regulators, however, have not specified any particular repair standards and have not required insurers to follow such standards. Moreover, nothing in plaintiffs' insurance contracts required State Farm to follow the standards preferred by plaintiffs. Similarly, no policy provision or law precludes State Farm from including its contracted repair shops in determining prevailing competitive repair labor rates. We therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Levy, a California resident, purchased a State Farm auto insurance policy that obligated State Farm to pay the cost of repair or replacement for covered vehicles if damaged. The policy provides that the cost of repair or replacement is based on one of the following: "1. the cost of repair or replacement

agreed upon by [the insured] and [State Farm]; [¶] 2. a competitive bid approved by us; or [¶] 3. an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area which the *car* is to be repaired as determined by a survey made by [State Farm]. If *you* ask, [State Farm] will identify some facilities that will perform the repairs at the prevailing competitive price. . . ."

In August 1999, Levy's car was involved in an accident and suffered damage to its right front wheel, right front fender, right front bumper, steering box, suspension, and lower body. Levy brought the damaged vehicle to a State Farm facility, where an employee estimated the cost of repair using State Farm's software. The estimator then offered to pay Levy $550.70, less the policy's $250 deductible, instead of having the vehicle repaired. Levy accepted the payment.

Battle, an Illinois resident, also purchased a State Farm auto insurance policy containing a repair or replacement provision similar to Levy's policy. In January 2001, an accident damaged the left front end and left fender of Battle's car. Battle took her car to a State Farm estimating facility, and at State Farm's request, had her car repaired at a State Farm-contracted repair shop.

Believing State Farm's repair estimates were inadequate, Levy and Battle sued State Farm on behalf of themselves and others similarly situated. After several State Farm demurrers were sustained with leave to amend, plaintiffs filed their fifth amended complaint, seeking damages, restitution, and declaratory and injunctive relief. The fifth amended complaint alleges that State Farm provides its policyholders repair estimates which do not meet industry standards as defined by automobile manufacturers, the Inter-Industry Conference on Auto Collision Repair (I-CAR), or the National Institute for Automotive Service Excellence (ASE).

Specifically, plaintiffs contend State Farm's repair estimates routinely omit the time and materials for the following, where required: "(i) weld through primer; (ii) undercoating; (iii) flex additive; (iv) masking inner surfaces to prevent over-spray into door and hood jams; (v) front wheel alignment; (vi) four wheel alignment; (vii) aim lamps; (viii) replace EPA label; (ix) rust proofing; (x) removal and installation of add ons such as moldings and trim to facilitate blending of paint; (xi) removal of parts such as radiators in order to properly refinish them; (xii) refurbishing used replacement parts; (xiii) wet sand and buff procedures to match the existing finish; (xiv) replacement of

bumper support brackets when the bumper has been damaged; and (xv) seat belt checks."

The complaint further alleges that State Farm contracts with repair shops to follow State Farm's estimate of necessary repairs, even if the shop's professionals might believe additional repairs are required. State Farm will not pay for repairs not specified in State Farm's estimate. The complaint also alleges the labor rates State Farm uses in its estimates are below market rates because State Farm uses only its own contracted repair shops in conducting the survey that determined the "prevailing competitive price" required by the insurance contract.

State Farm demurred to the fifth amended complaint, moved to strike the class allegations, and sought dismissal of Battle's claims on the grounds of forum non conveniens. The trial court granted the demurrers without leave to amend, granted the motion to strike, and dismissed Battle's claims based on forum non conveniens. Plaintiffs now appeal.

## II

### STANDARD OF REVIEW

"On review of an order sustaining a demurrer without leave to amend, our standard of review is de novo, 'i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' [Citation.]" (*Santa Teresa Citizen Action Group v. State Energy Resources Conservation & Development Com.* (2003) 105 Cal.App.4th 1441, 1445 [130 Cal.Rptr.2d 392].) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171] (*Zelig*).)

## III

### DISCUSSION

A. *Plaintiffs Have Not Alleged State Farm Breached Any Terms of Its Insurance Policy*

    1. *The Policy Does Not Require State Farm to Provide Repairs Based on Plaintiffs' View of "Industry Standards"*

Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity. (See generally 4

Witkin, Cal. Procedure (4th ed. 1996) Pleading, § 4495, pp. 585–586; *Bentley v. Mountain* (1942) 51 Cal.App.2d 95, 98 [124 P.2d 91] [general averments that defendants violated contract insufficient; pleader must allege facts demonstrating breach]; *Thompson v. Purdy* (1931) 117 Cal.App. 565, 567 [4 P.2d 282] [general averments that defendant failed to perform duties or comply with contract insufficient].) The fifth amended complaint alleges State Farm breached the contract by offering an amount to Levy based upon a repair estimate, which did not meet "industry standards" because it excluded reimbursement for the following items: "(1) 1.8 hours to strip the replacement part; (2) 0.3 hours for removal and installation of hood front molding; (3) 0.3 hours for removal and installation of right headlamp door; (4) 0.5 hours for removal and installation of the right door trim panel; (5) 0.3 hours for removal and installation of the right door belt molding; . . . (6) 0.5 hours for refinishing the corrosion protection[;]" (7) 1.5 hours of labor and $5 in parts for masking the entryways; (8) 1.0 hours of labor and $1 in parts for color sand and buff; and (9) a front end alignment valued at $39.95. The complaint also alleged State Farm based its estimate on labor rates $4 an hour below industry standards. As a result of these alleged deficiencies, State Farm understated Levy's repair by approximately $440.

The complaint also alleged that the repairs performed on Battle's car did not include certain repairs necessary to conform with industry standards, listing the following omissions: "(1) 1.7 hours to remove and install the radiator and the bolted parts as necessary to properly refinish the radiator side panel; (2) 0.5 hours for weld-thru primer to prevent corrosion from occurring between the welded parts; . . . (3) 0.3 hours for a seat belt check[;]" (4) 0.3 hours and $32.85 in parts to replace the left body side molding; and (5) right and left bumper support bracket replacement at a cost of $118.50. The complaint alleges the difference between the cost of State Farm's repairs to Battle's car and a repair done based on industry standards was approximately $300.

Despite the complaint's specific description of how Levy's estimate and Battle's repair fell short of "industry standards," the trial court sustained a succession of State Farm's demurrers because plaintiffs failed to demonstrate a link between State Farm's alleged violation of "industry standards" and the insurance contracts State Farm issued to the two named plaintiffs. The trial court noted the insurance contract did not purport to obligate State Farm to follow any particular industry standard, but required State Farm only to "restore the vehicle to its pre-loss condition."

█ "The meaning to be ascribed to an insurance policy, as with any contract, is a question of law. It is a matter, in the first instance, for the trial

court's determination, not the jury's. . . . 'Although we construe all provisions, conditions, or exceptions that tend to limit liability strictly against the insurer [citation], strict construction does not mean strained construction. [Citations.] We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid.' [Citation.] The words used in a policy of insurance are to be construed according to the plain meaning a layman would ordinarily attach to them . . . . [Citation.]" (*Ray v. Farmers Ins. Exchange* (1988) 200 Cal.App.3d 1411, 1415–1416 [246 Cal.Rptr. 593] (*Ray*).) ▮ In *Ray,* the court recognized the plain, ordinary meaning of "pre-loss condition" in an insurance contract meant the "preaccident safe, mechanical, and cosmetic condition." (*Id.* at p. 1418.) The fifth amended complaint does not allege in what manner Battle's car after repair differed from its preaccident condition, or how Levy's car would have differed from its preaccident condition had it been repaired according to State Farm's estimate. Instead, the complaint makes the same allegation as to the omitted repair items: "Each of these repairs was required by the industry standards as set forth by automobile manufacturers, I-CAR and ASE. There are no standards accepted in the industry which would have allowed for omission of these repairs. "

Attempting to establish a link between the cited industry standards and the policy's promise to restore the vehicle to preaccident condition, the fifth amended complaint cites California Code of Regulations, title 16, section 3365, providing: "The accepted trade standards for good and workmanlike auto body and frame repairs shall include, but not be limited to, the following: [¶] (a) Repair procedures including but not limited to the sectioning of component parts, shall be performed in accordance with OEM [original equipment manufacturer] service specifications or nationally distributed and periodically updated service specifications that are generally accepted by the autobody repair industry. [¶] (b) All corrosion protection shall be applied in accordance with manufacturers' specifications or nationally distributed and periodically updated service specifications that are generally accepted by the autobody repair industry."

Plaintiffs' reliance on California Code of Regulations, title 16, section 3365, however, is problematic for two reasons. First, the regulation cited does not purport to apply to insurers, or to provide a minimum standard for repairs required to return a vehicle to its precollision condition. Instead, section 3365 was adopted to carry out the purposes of Business and Professions Code section 9884.7, which provides that the Bureau of Automotive Repairs may invalidate an auto repair dealer's registration for "[a]ny willful departure from or disregard of accepted trade standards for good and workmanlike repair in any material respect, which is prejudicial to another without consent of the

owner or his or her duly authorized representative." (Bus. & Prof. Code, § 9884.7, subd. (a)(7).) The provision does not establish a private right of action against an insurer.

Second, the regulation declines to adopt any particular repair standard. Thus, the regulation is not violated simply because a repair estimate fails to meet specifications outlined by the manufacturers, I-CAR, or ASE. In essence, plaintiffs' complaint invites the court to determine whose repair standards State Farm must follow, something California regulators have expressly declined to do.

Finally, plaintiffs cite the complaint's allegation that a failure to follow the cited industry standards "by definition do[es] not return a vehicle to its pre-loss condition." As we noted above, in reviewing a trial court's order sustaining demurrers, " ' "[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] . . ." ' " (*Zelig, supra,* 27 Cal.4th at p. 1126.) This allegation is a mere conclusion unsupported by any provision of the insurance policy or applicable law. We thus reject it.

### 2. *The Complaint Does Not Allege a Breach of Contract Based on State Farm's Labor Costs*

The fifth amended complaint alleges the labor costs in the estimate provided to Levy were "$4 per hour below industry standards." Again, nothing in the insurance contract requires State Farm to set labor costs at the industry scale. Instead, the policy requires State Farm's repair estimate to be "based upon the prevailing competitive price." The policy explains: "The prevailing competitive price means prices charged by a majority of the *repair market* in the area where the *car* is to be repaired as determined by a survey made by [State Farm]" (Italics added. ) The complaint makes no connection between State Farm's failure to follow industry standards and the policy's requirement that the repair estimate reflect the prevailing competitive price.

Although not referring specifically to Levy's estimate, or Battle's repair, the complaint alleges that State Farm does not conduct its prevailing competitive price surveys properly. Citing a State Farm brochure, the complaint alleges: "State Farm has narrowly interpreted the 'repair market in the area where the car is to be repaired' as 'composed of those repair facilities which comply with State Farm Insurance Company's repair facility criteria.' In other words, the 'survey' called for in the policy has been done only of repair facilities that have agreed to make the repair omissions required by State Farm and charge the lower labor rates required by State Farm. Further, State Farm only determines by the survey that a 'substantial number' of the shops

surveyed can perform the repairs at State Farm's prices. It does not define substantial number and this does not necessarily mean a majority, as required by the terms of the insurance contract. State Farm's survey data and results remain strictly confidential so there is no way for insureds to test the timeliness or the accuracy of the surveys. The representation that these are 'market rates' is therefore false. The labor rates State Farm uses in its Estimates are consistently below the actual market rate for the labor in question."

Despite the complaint's general conclusion that State Farm's labor rates are below market rates, the complaint's specific allegations supporting this conclusion do not demonstrate a breach of contract. For example, the complaint alleges that State Farm surveys only those shops which agree to State Farm's rates. There is nothing in the policy, however, which prevents State Farm from doing this. Moreover, although some states preclude insurers from including contracted repair shops in auto repair labor rate surveys, California does not. (Compare Cal. Code Regs., tit. 10, § 2698.91 with R.I. Gen. Laws § 27-29-4.4.)[1] Similarly, the complaint cites a State Farm publication which promises that a "substantial number" of the shops in the local area will repair the insured's damaged vehicle at the rates quoted, and asserts that this "does not necessarily mean a majority," as required by the policy. An allegation that a breach of contract *might have* occurred is plainly insufficient to support a breach of contract cause of action.[2]

We therefore conclude the fifth amended complaint fails to state a cause of action for breach of contract.

B.–E.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[1] Rhode Island General Laws, section 27-29-4.4, subdivision (a)(3), provides: "Insurers may not use an auto body labor rate survey, contract rates from auto body repair facilities with which it has a formal agreement or contract to provide auto body repair services to insureds and/or claimants, or rates from a repair facility holding a special use license."

[2] We note that Levy could have determined whether State Farm's survey included a majority of shops in the repair area. California Code of Regulations, title 10, section 2698.91 requires insurers to report labor survey results to the Department of Insurance, which must include the name and address of each shop included in the survey, and the total number of shops in the area. (*Id.*, § 2698.91, subd. (c).) The Department of Insurance is required to make the reports publicly available on request. (*Id.*, § 2698.91, subd. (e).)

[*] See footnote, *ante*, page 1.

## IV

### DISPOSITION

The judgment is affirmed. State Farm is entitled to its costs on appeal.

Bedsworth, Acting P. J., and Moore, J., concurred.