[No. B217957. Second Dist., Div. Eight. Oct. 6, 2010.]

LOURDES RAMIREZ et al., Plaintiffs and Appellants, v.
WELLER WONG, Defendant and Respondent.

**COUNSEL**

Law Offices of Robert A. Brown and Robert A. Brown for Plaintiffs and Appellants.

Mark R. Weiner & Associates and Kathryn Albarian for Defendant and Respondent.

**OPINION**

**GRIMES, J.—**

### SUMMARY

Two female tenants sued their landlord after the resident manager of their apartment building entered their apartment in their absence, opened their dresser drawer and removed and sniffed their underwear. The tenants alleged a single cause of action under the Unruh Civil Rights Act (Civ. Code, § 51) and other sections of the Civil Code that provide the right to be free from violence or intimidation by threat of violence based on sex and that prohibit

sexual harassment. The trial court sustained the landlord's demurrer to the complaint without leave to amend and dismissed the case. We affirm the order of dismissal.

## FACTS

Lourdes Ramirez and her minor daughter Jessica (collectively, plaintiffs) were tenants in an apartment building owned by Weller Wong. Wong (landlord) employed Daniel Valdez as resident manager. Valdez was responsible for supervising repairs, maintenance, tenant concerns and similar matters for the landlord.

One day in June 2007, Valdez entered plaintiffs' residence (while on duty as resident manager and using a key provided by the landlord), went into the bedroom, opened plaintiffs' dresser drawer and removed and sniffed plaintiffs' underwear, all without plaintiffs' permission or knowledge. Valdez knew no one would be present at the time he entered plaintiffs' residence, because he knew Ramirez's working hours, place of employment and status as a single, working mother, and knew Jessica was of school age. Valdez also knew the layout of plaintiffs' residence and knew other tenants living in proximity to plaintiffs would be absent. Plaintiffs had no personal relationship with the landlord or Valdez.

Plaintiffs sued the landlord and Valdez, alleging the right under Civil Code section 51.7 to be free from any violence or intimidation committed against their persons or property on account of characteristics listed in the Unruh Civil Rights Act (the Act), including sex and marital status. Plaintiffs' first amended complaint alleged Valdez's conduct "intimidated [them] sexually and on account of the status of [Ramirez], as a single mother," thereby denying their rights under Civil Code section 51.7, including their rights under the Act to equal accommodations "regardless of sex, marital status or the perception of plaintiffs' scent." Plaintiffs alleged the landlord was vicariously liable for Valdez's conduct and landlord had a "non-delegable duty to plaintiffs . . . not to conduct a search of plaintiffs' sexually intimate property . . . ." Lourdes Ramirez was "further intimidated on an ongoing basis," the complaint alleged, because Valdez, as a result of his employment as resident manager, knew her Social Security number, credit information, the location of Jessica's school, and other personal information. Plaintiffs sought treble damages, statutory damages of $25,000 each, and attorney fees under Civil Code section 52.[1]

---

[1] Civil Code section 52 governs actions for damages and other relief in connection with the denial of rights under the Act and under sections 51.7, 51.9 and other sections of the Civil Code. (Civ. Code, § 52, subds. (a) & (b).)

The landlord demurred, and the trial court sustained the demurrer without leave to amend. The court's written order dismissing the action against the landlord, entered two weeks after the ruling, observed the complaint did not state a cause of action for violation of Civil Code section 51.7 "in that plaintiffs have not alleged and cannot allege violence or threat of violence against plaintiffs or plaintiffs' property."

The day before entry of the court's order of dismissal, plaintiffs filed a motion for reconsideration and for leave to file a second amended complaint. The motion argued that Valdez's acts were a sexual assault on plaintiffs, who felt threatened that Valdez "would use his control over [landlord's] apartment complex to enter plaintiffs' apartment in the middle of the night to rape either or both plaintiffs." Plaintiffs stated that they had sued for sexual harassment and that the proposed second amended complaint "more fully articulated the facts, particularly those facts concerning the issue of threat of violence which the court addressed at the hearing on the demurrer . . . ."[2]

The court denied plaintiffs' motion, observing that it could not reconsider its ruling sustaining the landlord's demurrer because an order of dismissal had already been entered, and even if plaintiffs were entitled to reconsideration of the order, they had failed to show the existence of "new or different facts, circumstances, or law . . . ." (Code Civ. Proc., § 1008, subd. (a).)

Plaintiffs filed a timely appeal from the order of dismissal.

## DISCUSSION

" 'When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) When a demurrer is sustained without leave to amend, " 'we decide whether

---

[2] The second amended complaint added an allegation that plaintiffs discovered Valdez's conduct later on the day it occurred, when they examined the contents of a recorded video surveillance system they had installed. The video showed Valdez's conduct as described in the complaint, and also showed him examining the area under plaintiffs' bed and adjusting items on plaintiffs' dresser. Other new allegations included (on information and belief) that Valdez had previously entered plaintiffs' bedroom and committed similar acts; that Valdez "wanted to engage in sexual relations with either or both of plaintiffs"; that Valdez's conduct constituted "a sexual assault . . . and . . . a reasonable threat of sexual physical attack upon plaintiffs"; and that Valdez resided next door to plaintiffs "and could easily have used his key to enter plaintiffs' apartment in the middle of the night to rape either or both of plaintiffs."

there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' " (*Ibid.*)

In this case, neither the first amended complaint nor the proposed second amended complaint states facts sufficient to constitute a cause of action under the Act or under the other provisions of the Civil Code upon which plaintiffs rely.

## 1. *Civil Code section 51 (the Act)*

■ The Act provides that all persons in California are entitled "to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." This is so "no matter what their sex . . . [or] marital status" or other listed characteristics. (Civ. Code, § 51, subd. (b).) Anyone who "denies, aids or incites a denial, or makes any discrimination or distinction contrary to [the Act]" is liable for damages and penalties.[3] (Civ. Code, § 52, subd. (a).)

■ Plaintiffs argue that Valdez entered their apartment "because they are single females," and that a reasonable trier of fact could conclude they "were discriminated [against] on the basis of sex and/or marital status." Plaintiffs cite no authority for this proposition, and the claim is meritless. The Act " 'is a public accommodations statu[t]e that focuses on discriminatory behavior by business establishments . . . .' " (*Stamps v. Superior Court* (2006) 136 Cal.App.4th 1441, 1452 [39 Cal.Rptr.3d 706] (*Stamps*).) The purpose of the Act is " 'to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity covered by the act.' " (*Stamps*, at p. 1448; see *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 500 [86 Cal.Rptr. 88, 468 P.2d 216] [Legislature did not intend to include discriminations other than those made by a business establishment "in the course of furnishing goods, services or facilities to its clients, patrons or customers"].) Valdez's conduct may engender civil or criminal liability on any number of bases, but his conduct had nothing to do with the denial of equal accommodations or facilities on the basis of sex. Plaintiffs did not and cannot state a claim for violation of the Act.

---

[3] Civil Code section 52 imposes liability for "each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in [the Act]. . . ." (Civ. Code, § 52, subd. (a).)

## 2. *Civil Code section 51.7*

■ Civil Code section 51.7 (section 51.7) is not part of the Act (*Stamps, supra,* 136 Cal.App.4th at pp. 1445, 1449–1450, 1451), and " 'has nothing to do with public accommodations or business establishments.' " (*Id.* at p. 1452.) It states that all persons have "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined" in specified subdivisions of the Act— including sex and marital status. (§ 51.7, subd. (a).) This right may be enforced in a private action for damages[4] (Civ. Code, § 52, subd. (b)), and the statute has been described (together with Civ. Code, § 52.1) as "provid[ing] a civil remedy for hate crimes." (*D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 844 [98 Cal.Rptr.3d 300] (*D.C.*).)

Plaintiffs contend that a jury should decide whether they "could reasonably fear rape or other sexual attack by [the landlord's] resident male manager" as a result of his conduct, and that a plaintiff need not be physically present with the defendant in order to state a cause of action under section 51.7 for "intimidation by threat of violence . . . ." (§ 51.7, subd. (a).) While the latter point may be correct, the pertinent point is that no threat was made, either in the presence of plaintiffs or otherwise.

Valdez did not express any intention, either by words or conduct, at the time he entered plaintiffs' apartment or at any other time, to inflict injury on plaintiffs or their property. The statute requires violence or a threat of violence; it is, after all, a "hate crimes" statute. (*D.C., supra,* 176 Cal.App.4th at p. 844.) There can be no "threat of violence" without some expression of intent to injure or damage plaintiffs or their property, and there simply was none. (See Webster's 3d New Internat. Dict. (2002) p. 2382 [defining "threat" as involving "an expression of an intention to inflict evil, injury, or damage on another"]; cf. *Coon v. Joseph* (1987) 192 Cal.App.3d 1269, 1277–1278 [237 Cal.Rptr. 873] [no cause of action under § 51.7 where plaintiff alleged his male life partner was verbally and physically assaulted in plaintiff's presence; plaintiff's complaint established "that no violence or intimidation was committed or threatened against [plaintiff's] person and thus no cause of action exists in his own right"].) Again, Valdez's conduct may render him liable for a variety of torts, but it did not violate plaintiffs' right "to be free

---

[4] "Whoever denies the right provided by Section 51.7 [freedom from violence] or 51.9 [sexual harassment], or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following: [¶] (1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages. [¶] (2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 . . . . [¶] (3) Attorney's fees . . . ." (Civ. Code, § 52, subd. (b).)

from any violence, or intimidation by threat of violence" based on their sex or marital status under section 51.7.

### 3. Civil Code section 51.9

■ Civil Code section 51.9 (section 51.9) covers sexual harassment in certain business relationships outside the workplace, including the relationship between a plaintiff and a landlord or property manager. (§ 51.9, subd. (a)(1)(D); *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1044 [95 Cal.Rptr.3d 636, 209 P.3d 963] (*Hughes*).) The plaintiff must prove, among other things, that the defendant "has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe."[5] (§ 51.9, subd. (a)(2); see *Hughes*, at p. 1045 [§ 51.9 "limits liability to sexually harassing conduct that is 'pervasive or severe' "].)

In this case, while Valdez "engaged in . . . physical conduct of a sexual nature," plaintiffs' complaint does not state a cause of action against the landlord under section 51.9. In the first place, it is difficult to see how conduct involving no interaction between plaintiffs and the landlord (or Valdez), of which plaintiffs were unaware until after it occurred, could constitute sexual harassment. But assuming it could, the conduct alleged was neither pervasive enough nor severe enough to permit liability under section 51.9.

In *Hughes*, the court held that the words " 'pervasive or severe' " are to be given "the same meaning that those words have in the employment context." (*Hughes, supra*, 46 Cal.4th at pp. 1046, 1048 ["[t]herefore, we find guidance in the holdings and reasoning of court decisions dealing with sexual harassment in the workplace in determining whether plaintiff . . . has a viable cause of action under section 51.9 . . ."].) To prevail on a hostile work environment claim, the plaintiff must show that the harassing conduct was " 'severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex.' " (*Id.* at p. 1043.) Thus, "[w]ith respect to liability under section 51.9, . . . the relevant inquiry is whether the alleged sexually harassing conduct was sufficiently pervasive or severe as to alter the conditions of the business relationship. This inquiry must necessarily take into account the nature and context of the particular business relationship." (*Id.* at p. 1048.)

---

[5] Like section 51.7, section 51.9 is not part of the Act. (*Hughes, supra*, 46 Cal.4th at p. 1044, fn. 1.) Damages are awarded as provided by Civil Code section 52, subdivision (b). (See fn. 4, *ante*.)

*Hughes*, which involved a trustee relationship, is instructive. The alleged sexual harassment in *Hughes* consisted of comments made by the defendant trustee to the plaintiff during one telephone conversation, and a brief "vulgar and highly offensive" statement the defendant made in person to the plaintiff later that day. (*Hughes, supra,* 46 Cal.4th at pp. 1048, 1049.) The court observed that, to be pervasive, "the sexually harassing conduct must consist of 'more than a few isolated incidents.' " (*Id.* at p. 1048.) The conduct in *Hughes*, the court concluded, did not meet that standard and "was not so egregious as to alter the conditions of the underlying professional relationship." (*Ibid.*)

The same is true here. Plaintiffs are able to identify only one instance of allegedly harassing conduct. And while plaintiffs' proposed second amended complaint alleged, on information and belief, that Valdez had previously entered their bedroom "on more than occasion [*sic*]" and committed similar acts, plaintiffs alleged no facts in support of that conclusory allegation. (See *Zelig v. County of Los Angeles, supra,* 27 Cal.4th at p. 1126 [courts treat a demurrer as admitting all material facts properly pleaded, " ' "but not contentions, deductions or conclusions of fact or law" ' "].) As in *Hughes*, Valdez's conduct "was not so egregious as to alter the conditions" of the landlord-tenant relationship. (*Hughes, supra,* 46 Cal.4th at p. 1048; see *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 131 [87 Cal.Rptr.2d 132, 980 P.2d 846] (*Aguilar*) [plaintiff must show " 'a concerted pattern of harassment of a repeated, routine or a generalized nature' "].)

Nor was Valdez's conduct "severe" within the meaning of section 51.9. An isolated incident of harassing conduct "may qualify as 'severe' when it consists of 'a *physical* assault or the threat thereof.' " (*Hughes, supra,* 46 Cal.4th at p. 1049.) As previously discussed, there was neither a physical assault on plaintiffs nor a threat of physical assault. Plaintiffs insist, however, that Valdez was arrested and convicted of burglary, and that any reasonable person would consider Valdez's "home invasion" to be a "severe intrusion." No doubt plaintiffs are correct, but they again miss the point. Valdez's conduct may constitute burglary or other crimes, and may be a severe intrusion into plaintiffs' privacy. But those facts cannot transform Valdez's conduct into sexual harassment, which requires " 'a concerted pattern of harassment of a repeated, routine or a generalized nature' " (*Aguilar, supra,* 21 Cal.4th at p. 131) or, in the case of an isolated incident, " 'a *physical* assault or the threat thereof' " (*Hughes, supra,* 46 Cal.4th at p. 1049). Neither is alleged here. (See *ibid.* [trustee's threat (" 'I'll get you on your knees eventually.' ") was a threat of financial retaliation, not physical violence, and "such a threat will not support a claim under section 51.9 for the hostile environment form of sexual harassment, because it does not constitute 'severe' harassing conduct"].) Accordingly, plaintiffs have not stated a cause of action for sexual harassment under section 51.9.

## DISPOSITION

The judgment (order of dismissal) is affirmed. Weller Wong is to recover his costs on appeal.

Flier, Acting P. J., and O'Connell, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.