Filed 6/13/16  Modified and certified for publication 7/6/13 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM BALDWIN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>AAA NORTHERN CALIFORNIA,<br>NEVADA & UTAH INSURANCE<br>EXCHANGE et al.,<br><br>        Defendant and Respondent. | A142217<br><br>(San Mateo County<br>Super. Ct. No. CIV-521162) |

Plaintiff William Baldwin (Appellant) appeals from the judgment dismissing with prejudice his complaint against defendant AAA Northern California, Nevada & Utah Insurance Exchange (AAA), after AAA's demurrer was sustained without leave to amend.  Appellant contends he stated valid causes of action against AAA for breach of contract and bad faith because AAA refused to fully compensate him for collision-related damages to his vehicle as required under his insurance policy and under the insurance policy of a driver involved in the collision.  For the reasons set forth below, we affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

As this is an appeal from an order sustaining AAA's demurrer, in the factual summary that follows we accept as true the facts alleged in the complaint and the attached exhibit.  (*Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598, 607.)

1

Appellant's almost new Toyota Tundra Pickup (pickup) sustained structural damage, while parked, as a result of a collision between the vehicles of defendants Mark Rivera Hollandsworth and Peter Bona Sebastian. Appellant had an insurance policy through AAA covering collision-related damages. Defendant Hollandsworth also had an insurance policy with AAA covering property damage that he caused through negligence.

Once advised of the accident, AAA refused to consider the pickup a "total loss." Instead, it had the vehicle repaired at a reported cost of $8,196.06, and provided a rental car for Appellant during the interim. As a result of the collision and following the repairs, the pickup's future resale value was decreased by more than $17,100.

Appellant filed suit, alleging a first cause of action against defendants Hollandsworth and Sebastian for negligence, and second and third causes of action against AAA for breach of contract and bad faith. Appellant contended that AAA was obligated, under his insurance policy and that of defendant Hollandsworth, either to pay him the entire pre-accident value of the pickup or to repair the pickup to its original pre-accident condition, and that AAA did neither. After repair work was completed, Appellant contends, the pickup did not match its pre-accident condition "with respect to safety, reliability, mechanics, cosmetics and performance" and its future resale value had decreased by $17,000. The rental vehicle provided him also did not match the pre-accident value of the pickup, and Appellant seeks the difference in value for the period that the pickup was under repair.

AAA demurred to the complaint, contending that Appellant essentially was seeking reimbursement for the lost market value of his pickup, a loss that specifically was excluded under his insurance policy. The trial court agreed and sustained the demurrer to the second and third causes of action against AAA. Appellant did not seek leave to amend the complaint or identify further facts that might be added to an amended complaint. The trial court consequently sustained the demurrer without leave to amend, and ordered a final judgment of dismissal with prejudice for AAA. This appeal followed.

2

## DISCUSSION

A decision to sustain a demurrer is a legal ruling, which we review de novo. (See, e.g., *San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 426.) In doing so, we "must assume the truth of the complaint's properly pleaded or implied factual allegations." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Green Valley Landowners Assn. v. City of Vallejo* (2015) 241 Cal.App.4th 425, 432.) "We also consider the complaint's exhibits." (*San Mateo Union High School Dist. v. County of San Mateo, supra,* 213 Cal.App.4th at p. 425.) Appellant bears the burden of demonstrating that the trial court erred in sustaining the demurrer. (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8.)

### 1.    Breach of contract

" ' "[I]nterpretation of an insurance policy is a question of law." [Citation.] "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." [Citation.] Thus, "the mutual intention of the parties at the time the contract is formed governs interpretation." [Citation.] If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language "is clear and explicit, it governs." ' " (*Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1074–1075.)

In this case, the policy language was clear and explicit. Regarding coverage for car damage, it provided that AAA "*may* pay the loss in money *or* repair . . . damaged . . . property." (Italics added.) The policy's use of the term "may" suggests AAA had the discretion to choose between the two options. (See, e.g., *Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 433 [" 'May' " ordinarily "connotes a discretionary or permissive act"].) This suggestion is supported by the statement in the same section of the policy, under "**LIMITS OF LIABILITY**," that AAA's coverage responsibility for car damage would "not exceed" "the lesser of" those two options, namely, paying "the actual cash value of the . . . damaged property" or "the amount necessary to repair . . . the property with similar kind and quality."

3

Appellant alleges generally that it was not possible to repair his almost new pickup to its original pre-accident condition and that AAA's attempted repairs did not restore the car to that standard. Other than the decline in future resale value, however, Appellant offers no specific factual allegations identifying any unrepaired damage or continuing performance issue with the insured vehicle. He does not allege that the pickup had specific mechanical problems when returned to him, was unsafe in any specific way, or had any specific cosmetic flaws. Indeed, in his opening brief, Appellant indirectly suggests the pickup may have been returned to him in a state arguably qualifying as a "normal running condition," although he vaguely cautions that repaired vehicles generally "may still be dangerous," and describes anecdotal reports of others (non-parties) who experienced grave post-repair accidents.[1]

"Facts alleging a breach," however, "must be pleaded with specificity." (*Levy v. State Farm Mutual Automobile Ins. Co.* (2007) 150 Cal.App.4th 1, 6–7.) In reviewing an order sustaining a demurrer, the court does not assume the truth of "contentions, deductions, or conclusions of fact or law." (*Green Valley Landowners Assn. v. City of Vallejo, supra,* 241 Cal.App.4th at p. 432; see, e.g., *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 174 ["[A]n allegation that a defendant *might have* breached a contract does not state a valid cause of action"].) Appellant's general allegation that his repaired pickup was not restored to its pre-accident condition "with respect to safety, reliability, mechanics, cosmetics and performance" is a mere conclusion unsupported by any specific factual allegations. We thus reject it. (See, e.g., *Ramirez v. Wong* (2010) 188 Cal.App.4th 1480, 1488 [affirming order sustaining demurrer because plaintiffs alleged no facts supporting their "conclusory allegation"].)

Appellant relies on case law indicating that an insurer has an obligation to repair a damaged vehicle to its "pre-accident safe, mechanical, and cosmetic condition." He overlooks significant language from those cases, however, and ineffectively attempts to distinguish the facts in some instances. The cases do not stand for the principle that a

---

[1]One of the other described post-repair accidents involved a different make of car. In the other, the type of car involved was unspecified.

4

plaintiff may rely on general allegations to meet his burden in pleading a claim for breach of contract. To the contrary, one of the decisions he cites affirmed an order sustaining a demurrer, in part because the complaint contained conclusory allegations, failing to specify the manner in which the repaired vehicle differed from its pre-accident condition. (*Levy v. State Farm Mut. Auto. Ins. Co., supra,* 150 Cal.App.4th at pp. 8–9.)

Another of the cases that plaintiff cites, *Ray v. Farmers Ins. Exchange* (1988) 200 Cal.App.3d 1411 (*Ray*), more significantly undercuts his position. In that seminal case, as here, the insured alleged breach of contract and bad faith claims based on the insurer's refusal to compensate him for diminution in market value after repair of his wrecked car. (*Id.* at pp. 1413–1414.) As in this case, the insurance policy "unambiguously gave [the insurer] the right to elect to repair [the insured's] vehicle" to a similar condition if repair costs would be less than the actual cash value of the vehicle at the time of the loss. [2] (*Id.* at p. 1416.) The court cited case law concluding that the insurer's election to make repairs in such context was conclusive if the repairs placed the vehicle "substantially in its pre-accident condition." (*Id.* at pp. 1416–1417, citing *Owens v. Pyeatt* (1967) 248 Cal.App.2d 840, 849.) It specifically rejected the notion that this meant repairing the vehicle "to both its pre-accident condition *and* market value," reasoning that a vehicle would not qualify as a total loss if it is restored to "its *normal running condition.*" (*Ray, supra,* 200 Cal.App.3d at p. 1417.)

"To hold [the insurer] liable for the automobile's diminution in value," the court reasoned, "would make [the insurer] an insurer of the automobile's cash value in virtually all cases and would render essentially meaningless its clear right to elect to repair rather than to pay the actual cash value of the vehicle at the time of loss." (*Ray, supra,* 200 Cal.App.3d at p. 1417.) "The policy language unambiguously reserves to [the

---

[2]The policy in *Ray, supra,* 200 Cal.App.3d 1411, 1416, obligated the insurer to repair the vehicle to "like kind and quality," while the policy in this case uses the phrase "similar condition and quality," a semantical difference of no meaningful significance. (See, e.g., *People v. Moreno* (2014) 231 Cal.App.4th 934, 943 [using the terms interchangeably]; Webster's 10th Collegiate Dict. (2001) p. 1091 [defining "similar" to mean "like"].)

5

insurer] the right to elect the most economical method of paying claims," the court concluded, and it declined to rewrite that "unambiguous limitation of collision coverage to provide for a risk not bargained for." (*Id.* at p. 1418; see, e.g., *Rosen v. State Farm General Ins. Co., supra,* 30 Cal.4th at p. 1078 [declining to rewrite a standard insurance policy as doing so might compel "insurers to give more than they promised and might allow insureds to get more than they paid for"].)

More recently, *Carson v. Mercury Ins. Co.* (2012) 210 Cal.App.4th 409 (*Carson*), reached similar conclusions, relying in part on *Ray, supra,* 200 Cal.App.3d 1411. *Carson* observed that repairing a car to its pre-accident condition did not mean restoring it to its original condition "when it left the factory or showroom floor." (*Carson, supra,* 210 Cal.App.4th at p. 420.) It reasoned that "no repair can ever restore a vehicle to its pristine factory condition," and applying such a standard would mean "no vehicle could be adequately repaired." (*Ibid.*) "In California, and the majority of other jurisdictions," the court observed, "when the insurer elects to repair the car to its preaccident condition, it is not also required to pay for any loss of value to the vehicle, which can occur after a seriously damaged vehicle is fully repaired." (*Ibid.*)

Significantly, the court observed, the debate on this topic occurred "nearly a decade ago" before insurance policies included express exclusions barring payment for a car's diminution in value following an accident. (*Carson, supra,* 210 Cal.App.4th at p. 427.) In *Carson,* as in this case, the policy contained such an exclusion and, as in *Carson,* we find the language unambiguous. (*Id.* at p. 413; see, e.g., *Fresh Express Inc. v. Beazley Syndicate 2623/623 at Lloyd's* (2011) 199 Cal.App.4th 1038, 1053 ["Whether language in a contract is ambiguous is a question of law"].) The provision clearly stated that Appellant's coverage under his policy did not apply to " 'loss' " "caused by diminution in value of your insured car . . . by reason of a loss otherwise covered by this policy . . . ." The loss otherwise covered by the policy was the physical damage to the pickup. The policy thus defines AAA's " 'repair' obligation as not including 'diminution in value.' " (*Carson, supra,* 210 Cal.App.4th at p. 427.)

6

Appellant attempts to avoid the effect of the exclusion through several arguments, which we collectively find unpersuasive. He appears to argue that the insurance policy is ambiguous because the exclusion contradicts other provisions promising to cover loss, and that the policy therefore must be construed to protect his expectation of coverage. (See, e.g., *Sequeira v. Lincoln National Life Ins. Co.* (2015) 239 Cal.App.4th 1438, 1445.) An insurance policy provision is only ambiguous, however, " 'when it is capable of two or more constructions both of which are *reasonable*.' " (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867.) "Courts 'will not strain to create an ambiguity where none exists,' " (*North Bay Schools Ins. Authority v. Industrial Indemnity Co.* (1992) 6 Cal.App.4th 1741, 1745), and they must give effect to every part of the policy (*Palmer v. Truck Ins., Exchange* (1999) 21 Cal.4th 1109, 1115). This includes giving effect to exclusions. (See, e.g., *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 759 [Insurance companies may exclude coverage for particular damages]; *Underwriters of Interest Subscribing to Policy Number A15274001 v. ProBuilders Specialty Ins. Company* (2015) 241 Cal.App.4th 721, 729 [The plain language of an exclusion must be respected].) As noted, we do not find the exclusion ambiguous. Nor is it contradictory to the loss provisions. It merely limits their scope.

We also do not find persuasive Appellant's arguments that the exclusion may be disregarded because it was contained in the "fine print" of the insurance policy. Exclusion clauses are subject to two separate tests. First, " 'the limitation must be "conspicuous" with regard to placement and visibility.' " (*Alterra Excess & Surplus Ins. Co. v. Snyder* (2015) 234 Cal.App.4th 1390, 1404 (*Alterra*).) Second, the " 'language must be "plain and clear." ' " (*Ibid.*) Whether an exclusion meets these requirements is a question of law. (*Ibid.*) We decide that question of law favorably to AAA.

The exclusion is contained in AAA's standard policy, in a part specifically covering "**CAR DAMAGE**." The part includes sections with capitalized and boldfaced headings in simple language addressing, respectively, coverage, definitions, additional payments, exclusions and limitations of liability. The exclusions are stated in numbered paragraphs, with adequate spacing, using the same style and size of print found elsewhere

7

in the policy.  These factors satisfy the " 'conspicuous, plain and clear test' " for exclusions, namely, that they " 'be positioned in a place and printed in a form which will attract the reader's attention.' [Citations]; see *National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 384 . . . [exclusion located under a bold-faced heading entitled "Exclusions" and appearing in the same style of print found elsewhere in the policy].)" (*Alterra, supra,* 234 Cal.App.4th 1390, 1404.)

Appellant also attempts to argue that the exclusion violates public policy and thus is void.  He suggests the exclusion renders AAA's coverage inadequate and that it unreasonably denies him the benefits of the insurance contract in a way that violates public policy reflected in statute and case law.  Appellant refers to subdivisions (h)(3) and (h)(5) of Insurance Code section 790.03 as declarative of public policy.[3]  Those subdivisions declare as unfair claims settlement practices the failure, respectively, to follow "reasonable standards" for promptly investigating and processing claims, or to promptly and fairly settle claims.[4]  Appellant also alludes to case law describing the "special relationship" between insurers and the insured, which confers on insurers a responsibility to take the public interest into account.  (See, e.g., *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 820 [Insurers, as purveyors of a "vital" "quasi-public" service "must take the public's interest seriously"]; *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [In deciding whether to settle a claim, an insurer must give the insured's interest "at least as much consideration" as its own].)

---

[3]Appellant also purports to quote from and rely on subdivisions (h)(9) and (h)(10) of Insurance Code section 790.03, although the actual text of those statutory provisions is entirely different than the language he presents.

[4]Insurance Code section 790.03 provides in pertinent part as follows: "The following are hereby defined as . . . unfair and deceptive acts or practices in the business of insurance.  [¶] . . . [¶] (h) Knowingly committing . . . any of the following unfair claims settlement practices:  [¶] . . . [¶] (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies. [¶] . . . [¶] (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. . . ."

Appellant's allegations do not suffice, however, to establish that the exclusion in his insurance policy violated public policy.

Appellant essentially argues that the insurance policy is fundamentally unfair and violates public policy because it allowed AAA the option of restoring his almost new vehicle to normal running condition, after an accident involving structural damage, without also requiring that it compensate him for the decrease in the vehicle's future resale value. His argument is undercut by California Supreme Court case law. In *Julian v. Hartford Underwriters Ins. Co., supra,* 35 Cal.4th 747, for example, the Supreme Court observed that " '[a]n insurance policy may exclude coverage for particular injuries or damages in certain specified circumstances while providing coverage in other circumstances.' [Citation.] It follows that an insurer is not absolutely prohibited from drafting and enforcing policy provisions that provide or leave intact coverage for some, but not all, manifestations of a particular peril. This is, in fact, an everyday practice that normally raises no questions . . . ." (*Id*. at p. 759.) Thus, "an insurance policy can provide coverage for weather conditions generally, but exclude coverage for specific weather conditions such as hail, wind, or rain." (*Ibid.*) Applying the same logic, an insurer may cover the cost of repairing a car damaged in an accident, but exclude coverage for the accompanying decrease in the car's future resale value.

There is precedent indicating that an insurance policy "clearly establish[ing] a financial incentive to maintain a hazardous condition injurious to the public may well be contrary to public policy." (*Rosen v. State Farm General Ins. Co., supra,* 30 Cal.4th at p. 1081 (conc. opn. of Moreno, J.), citing, inter alia, *Wildman v. Government Employees Ins. Co.* (1957) 48 Cal.2d 31 [finding void as contrary to public policy an insurer's attempt to exclude permissive users from car liability insurance protection]; but see *Rosen v. State Farm General Ins. Co., supra,* 30 Cal.4th at p. 1078 (maj. opn. of Brown, J.) ["we do not rewrite any provision of any contract, including the standard policy underlying any individual policy, for any purpose"].) Appellant appears to argue that the insurance policy here in question gives AAA an incentive to attempt superficial repairs to cars sustaining structural damage, returning unsafe cars to the roads, rather than declare

9

them a total loss and pay out their actual (greater) pre-accident cash value. We are not persuaded.

As Justice Moreno observed in his concurring opinion in *Rosen v. State Farm General Ins. Co.*, *supra,* 30 Cal.4th 1070, "the judicial power to declare public policy in the context of contract interpretation and enforcement should be exercised with great caution. ' " ' " The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." [Citation.] . . . "No court ought to refuse its aid to enforce a contract on doubtful or uncertain grounds. The burden is on the [one challenging the contract] to show that its enforcement would be in violation of the settled public policy of this state, or injurious to the morals of its people." ' " ' " (*Id*. at p. 1082.) Appellant does not meet this burden.

"In this case, there is a strong public policy in favor of allowing insurers to enforce unambiguous policy provisions, thereby encouraging stability in the insurance industry and allowing insurers the benefit of the bargain created by such unambiguous language." (*Rosen v. State Farm General Ins. Co., supra,* 30 Cal.4th at p. 1082 (conc. opn. of Moreno, J.).) On the other hand, the extent of the danger to the public is in doubt. The argument that literal enforcement of the policy at issue will create substantial financial incentives to effect purely cosmetic repairs, returning dangerous vehicles to the roads so as to injure the public ignores the existence of various countervailing disincentives. These include the likelihood that the insurer would be financially responsible under the same policy for any damages resulting from future accidents of an insufficiently repaired vehicle. Appellant does not contend that AAA canceled his policy after the accident. Moreover, insurers would be liable for tort damages if, in bad faith, they directed cosmetic or superficial repairs to an insured vehicle. (See *Rattan v. United Services Automobile Ass'n* (2000) 84 Cal.App.4th 715, 721, citing generally *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 684–685.)

Nor is this the case that the court posited in *Carson, supra,* 210 Cal.App.4th 409, when it observed that public policy concerns would come into play if an insurer "refused

to acknowledge the vehicle was nonrepairable but nevertheless proceeded with a purely cosmetic restoration." (*Id*. at p. 427.) Although Appellant does allege that AAA refused to acknowledge his pickup was non-repairable, he does *not* contend that the resulting repairs were purely cosmetic or that the pickup returned to him actually was unsafe. He also does not allege that all vehicles generally, or his particular type of pickup specifically, are incapable of being restored to a safe condition once having sustained structural damage.

Instead, Appellant alleges only that the repairs AAA directed did not restore his pickup to its "original" pre-accident condition, and his only specific factual allegation on this point is that AAA refused to compensate him for the decline in the pickup's future resale value. We agree with *Carson, supra,* 210 Cal.App.4th 409 that an insurer's "failure to take into account the vehicle's depreciation in value when opting to repair the vehicle cannot be deemed against public policy." (*Id*. at p. 427–428.) Accordingly, we reject Appellant's argument that the exclusion violated public policy and was void. As Appellant's claim for the difference in value between the rental vehicle AAA provided him and the pre-accident value of his pickup appears to rely on the same theory, it fails also.

## 2. Bad faith

We next consider whether Appellant has stated a cause of action for breach of the implied covenant of good faith and fair dealing. Appellant relies for this claim on an implied covenant in his own AAA insurance policy and in defendant Hollandsworth's

11

AAA insurance policy. For reasons discussed below, we conclude Appellant has failed to state a claim for breach of the implied covenant under either policy.[5]

" 'There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.' " (*Foley v. Interactive Data Corp., supra,* 47 Cal.3d at p. 684, quoting *Comunale v. Traders & General Ins. Co., supra,* 50 Cal.2d at p. 658.) The covenant is read into contracts to "protect the express covenants or promises of the contract . . ." (*Foley v. Interactive Data Corp., supra,* 47 Cal.3d at p. 690.) When an insurer " 'unreasonably and in bad faith' " withholds the benefits of the agreement, " 'it is subject to liability in tort.' " (*Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at p. 818, quoting *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575.) It is "essential" to recovery "that the insurer, in breaching the implied covenant have acted *unreasonably* [citations] or *without proper cause.*" (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395.)

In support of his cause of action for breach of the implied covenant of good faith and fair dealing, Appellant repeats the allegations discussed in the previous section. He claims AAA breached the covenant by refusing to either declare his pickup a total loss or repair it to its "original pre-accident condition." He also alleges AAA failed to reasonably investigate "the practical effect of deciding to repair the vehicle" before deciding to do so. Read in the context of the entire complaint, the latter allegation appears to be a part of Appellant's general argument that, in exercising its discretion

---

[5]We deferred action on the request that AAA filed on April 29, 2015, to augment the record, which we deemed to be a request for judicial notice. The request attached a document apparently signed by Appellant's counsel seeking the superior court's dismissal with prejudice of the negligence cause of action against defendant Hollandsworth. The proffered document does not reflect any court action on Appellant's request. Nor does AAA cite authority for its contention that, in seeking dismissal of defendant Hollandsworth, Appellant effectively also was dismissing any claims he had alleged against AAA based on that individual's insurance policy. As the proffered document is not necessary to our disposition of the case, we deny the request for judicial notice. (See *Piccinini v. California Emergency Management Agency* (2014) 226 Cal.App.4th 685, 690.)

under the insurance policy—repairing the pickup and declining to provide compensation for the decrease in its future resale value—AAA did not adequately consider his interests. These allegations do not suffice to present a cause of action for breach of the implied covenant of good faith and fair dealing because, as discussed in the previous section, AAA's alleged conduct was consistent with the express provisions of the contract.

Appellant attempts to argue that the express terms of the insurance contract, giving AAA discretion to repair the pickup and excluding coverage for its decreased market value, impermissibly contradicted the implied covenant of good faith and fair dealing. The argument misunderstands the nature of the implied promise. As the California Supreme Court has recognized, it "is aimed at making effective the agreement's promises." (*Foley v. Interactive Data Corp., supra,* 47 Cal.3d at p. 683.) It follows that the "performance of an act specifically authorized by the policy cannot, as a matter of law, constitute bad faith." (*Hibbs v. Allstate Ins. Co.* (2011) 193 Cal.App.4th 809, 821; *Love v. Fire Ins. Exchange* (221 Cal.App.3d 1136, 1148–1149 [An insurer "is not required to pay noncovered claims"]; *Carma Developers* (*Cal.*)*, Inc. v. Marathon Development of California, Inc.* (1992) 2 Cal.4th 342, 374 [In a non-insurance case, observing "We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement"].)

We agree with our colleagues in Division Two, who held, in the insurance context, that " 'courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power . . . .' " (*New Hampshire Ins. Co. v. Ridout Roofing Co.* (1998) 68 Cal.App.4th 495, 504–505.)[*] The possible exception would be "those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable illusory agreement." (*Id.* at p. 505, quoting *Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 808.) That does not appear to be the case here. According to Appellant's own allegations AAA performed as

---

[*] [NOTE: Justice Haerle, ret., authored this opinion, with Presiding Justice Kline and Justice Ruvolo concurring.]

promised under the insurance policy, directing the repair of his pickup following the accident and providing him a rental car during the interim. There is no allegation that AAA unreasonably delayed in doing so. Nor does Appellant allege that the pickup returned to him was defective in any specific way apart from the drop in its future resale value. Accordingly, Appellant has failed to state a cause of action against AAA for breach of the implied covenant under his own insurance policy. (See, e.g., *Carson v. Mercury Ins. Co., supra,* 210 Cal.App.4th at p. 428 [An insurer does not act in bad faith by repairing, as promised in the policy, the insured's vehicle].)

We also follow the holding of *Coleman v. Republic Indemnity Ins. Co.* (2005) 132 Cal.App.4th 403 (*Coleman*), in concluding that Appellant cannot state a cause of action for breach of the implied covenant against AAA under the insurance policy of defendant Hollandsworth for unfair settlement practices. Appellant would stand in the position of a third party claimant under that policy. (*Id.* at p. 409.) "In *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, . . . the Supreme Court held that a third party claimant—an individual who is injured by the alleged negligence of an insured party—does not have a private right of action against the insurer for unfair settlement practices." (*Coleman, supra,* 132 Cal.App.4th at p. 406.)

In a case of first impression in California, *Coleman, supra,* 132 Cal.App.4th 403, held that this rule applied "where the third party claimant is insured by the same insurer as the other party." (*Id.* at p. 406.) It reasoned the "coincidental fact that plaintiffs are insured by the same insurer as the other party does not change plaintiffs' position as strangers to the other party's insurance policy and as adversaries to the insurer. Thus, the insurer owes no duty of good faith and fair dealing to plaintiffs in settling their claims against the other party." (*Id.* at p. 410 ["The majority of other jurisdictions that have dealt with this issue have held that insurers do not owe a duty of good faith and fair dealing to third party claimants whom they also insure"].) We agree and conclude

14

Appellant also cannot stated a cause of action for bad faith against AAA based on defendant Hollandsworth's insurance policy.[6]

## 3. Leave to amend

Finally, Appellant makes a cursory argument that he should be permitted leave to amend the complaint. He would add allegations that the express terms of the insurance policy are ambiguous "considering the implied terms and representation to the public that the insurance policy covers 'losses' to the insured's property." This statement does not meet the "burden of demonstrating a reasonable possibility to cure" the discussed defects by amendment. (*Green Valley Landowners Assn. v. City of Vallejo* (2015) 241 Cal.App.4th 425, 432.)

"The plaintiff's 'burden of demonstrating a reasonable possibility to cure any defect' [citation] is not pro forma. ' "To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] . . . The plaintiff must clearly and specifically set forth . . . factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary." ' " (*Green Valley Landowners Association v. City of Vallejo, supra,* 241 Cal.App.4th at p. 432.) Appellant's cursory statement, noted above, is neither factual nor specific. As he has failed to offer any specific factual allegations indicating that the repairs to his pickup were deficient, beyond the fact that its future resale value was less than before the accident, he did not meet his burden in seeking leave to amend his complaint.

---

[6]As Appellant cannot state a cause of action against AAA for bad faith under either insurance contract, there is no need to consider the appropriate measure of property damages in tort. Accordingly, we deny as irrelevant Appellant's January 4, 2016, request that we take judicial notice of (1) the decision of the Judicial Council of California, at its December 2015, to amend California Civil Jury Instruction Number 3903J, and (2) the amended instruction. (See, e.g., *Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1488 [judicial notice of irrelevant materials denied].)

15

# DISPOSITION

The judgment dismissing the complaint against AAA is affirmed.  Appellant shall pay AAA's costs on appeal.

_____

McGuiness, P.J.

We concur:

_____

Pollak, J.

_____

Siggins, J.

16

Filed 7/13/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM BALDWIN,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>AAA NORTHERN CALIFORNIA,<br>NEVADA & UTAH INSURANCE<br>EXCHANGE, et al.,<br><br>   Defendant and Respondent. | A142217<br><br>(San Mateo County<br>Super. Ct. No. CIV-521162)<br>**ORDER MODIFYING AND<br>CERTIFYING OPINION FOR<br>PUBLICATION<br>[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

   It is ordered that the opinion filed herein on June 13, 2016, be modified as follows:

1.  On page 13, the footnote beginning with an asterisk should be deleted.

There is no change in the judgment.

   The opinion in the above-entitled matter filed on June 13, 2016, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Dated: _____     _____ P.J.

1

(A142217)


Trial Court:          San Mateo County


Trial Judges:         Hon. Gerald J. Buchwald


Attorneys:            Day Law Offices, Montie S. Day for Plaintiff and Appellant.


                      Coddington, Hicks & Danforth, R. Wardell Loveland, Jay C.
                      Patterson, Richard G. Grotch, Min K. Kang, for Defendant and
                      Respondent.