Filed 10/1/21  Smith v. Williams-Sonoma CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| KELLIE SMITH,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>WILLIAMS-SONOMA, INC., et al.,<br><br>        Defendants and Appellants. | B305144<br>(Los Angeles County<br> Super. Ct. No.<br> 19STCV36093) |

APPEALS from an order of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Orrick, Herrington & Sutcliffe, Frank N. Zalom, Lynne C. Hermle and Julia C. Riechert for Defendants and Appellants.

Doumanian & Associates, Nancy P. Doumanian; The Arkin Law Firm and Sharon J. Arkin for Plaintiff and Respondent.

_____

Respondent Kellie Smith sued appellant Williams-Sonoma, Inc. (WSI) alleging workplace misconduct. WSI moved to strike the complaint as a strategic lawsuit against public participation (SLAPP). (Code Civ. Proc., § 425.16; *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1007, fn. 1 (*Bonni*).)[1] An anti-SLAPP motion is "a procedure for weeding out, at an early stage, *meritless* claims" that chill First Amendment rights. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

On de novo review, we conclude that Smith cannot assert claims arising from WSI's (1) protected right to report employee theft to police and (2) preparatory investigation before calling police. However, claims of workplace misconduct under the Fair Employment and Housing Act (FEHA), wrongful termination in violation of public policy, and emotional distress do not arise from WSI's protected conduct in investigating and reporting theft to police and do not fall within section 425.16.

## FACTS AND PROCEDURAL HISTORY
### *Smith's Complaint*

WSI hired Smith in 2005. She began as an associate, became a coordinator, and was promoted to assistant store manager in 2010. She voluntarily left WSI in 2011. When she later returned to WSI's employ, she was not given a managerial position. She alleges that WSI has a poor attitude toward female employees and is reluctant to promote them.

In 2012, Smith secured a lead position in inventory control at WSI's distribution center. By 2018, she was the lead person in charge of customer returns. Though she supervised 30

---

[1] Undesignated statutory references are to the Code of Civil Procedure. Codefendant WSI managers Christopher Cuyler, Wesley Hashimoto, and Efren Sierra also appeal.

employees, Smith claims she had "no real management duties when compared to her male counterparts." She believes men are paid more and criticized less than woman employees at WSI. She asserts that WSI created a hostile environment, placing women in entry level positions at undesirable stores, not promoting them as quickly as men, and treating them without respect.

Smith alleges that she complained of violations of law and company policy, specifically about maltreatment of herself and other women. As a result of her complaints, WSI subjected her to adverse employment actions, including criticism, discipline, demotions, denial of salary or bonuses, and termination.

WSI terminated Smith's employment on June 14, 2018. It accused her of theft, fraud, dishonesty, and violation of company policy. She denies wrongdoing and alleges that WSI did not give her or other women the opportunity to defend themselves. Male employees who engaged in fraud, theft, and dishonesty were not punished as harshly as their female colleagues.

WSI "initiated the filing of criminal charges and a criminal prosecution" by making a police report. Smith had to hire an attorney and suffered emotional distress by becoming the target of a criminal investigation. Though prosecutors did not press charges against her, the incident damaged her reputation and ability to find work.

Smith's complaint asserts 13 causes of action. This includes six alleged violations of FEHA; wrongful discharge in violation of public policy; defamation; emotional distress; malicious prosecution; and abuse of process.

### Appellants' Motion to Strike

WSI's motion detailed the circumstances leading to Smith's termination. In April 2018, WSI's accounting department noticed

3

that returned merchandise designated for resale was "scrapped." WSI investigated why saleable goods were scrapped.

Operations manager Luz Villanueva declared that WSI has a system to process returns, including furniture and home accessories. Returned goods are inspected and assigned a designation. A "retail" designation means an item will be sent to a retail store or used to fulfill an online order. "Outlet" items are sent to outlet stores for resale. Some items are repaired and resold; some are sold to a liquidator. Valueless items unsuitable for resale are designated "donation" or "scrapped."

WSI has a charitable program to donate scrapped goods to Habitat for Humanity (Habitat). WSI employees load items designated for donation into trailers; Habitat then hauls the trailers from WSI. Saleable goods are not donated to Habitat.

WSI discovered that Smith was responsible for scrapping saleable goods on April 7, 2018. Documentation showed that four trailers of goods worth hundreds of thousands of dollars were designated "outlet." Smith manually changed the designation to "scrapped," making the goods worthless. When confronted, Smith claimed appellants Sierra and Cuyler walked by her that day; she asked to send the trailers to Habitat and they agreed. Smith also blamed Hashimoto for allowing her to scrap the trailers. The three managers denied authorizing Smith to scrap saleable goods.

WSI's charitable program was run by inventory manager Keith Wong. WSI's investigation revealed that Wong paid a Habitat driver to take trailers bound for Habitat to Wong's home.

Loss prevention manager Torri Piper, a former federal agent, conducted her investigation with an eye toward criminal prosecution or civil litigation. She discovered that Wong diverted

4

goods designated for sale at WSI outlets. He wrote the names of WSI associates on merchandise so they could buy it cheaply at a Habitat thrift store. Trailers scrapped by Smith on April 7 went to Wong. Wong and 12 other WSI employees were involved in this scheme.

As a result of the investigation, WSI's director of human resources (HR), Kecia Bailey, terminated 13 male and female employees. Smith was terminated for improperly scrapping saleable merchandise, causing WSI to lose over $100,000.

Bailey declared that WSI employees must adhere to polices requiring respect and equality and prohibiting harassment, discrimination, and retaliation, as described in the employee handbook. Bailey is available to hear concerns and investigates complaints about policy violations. WSI's business records contain no complaints from Smith of harassment, discrimination or retaliation, nor did she disclose unlawful conduct or activities. No records show she was denied promotions.

Luz Villanueva was Smith's direct supervisor. They interacted regularly yet Smith never complained of harassment, discrimination, or retaliation. Had Villanueva observed misconduct, she would have intervened and reported it to HR.

The WSI managers named in Smith's complaint denied that they harassed or discriminated against her, or observed any misconduct against her, or heard her complain of harassment, discrimination, or retaliation. They had little interaction with her and did not direct her to scrap goods designated for sale in WSI outlet stores.

Piper presented her findings to the Los Angeles County Sheriff's Department. Based on Smith's conduct in scrapping trailers diverted to Wong and refusal to cooperate with law

enforcement, a detective arrested Smith. Criminal charges were brought against Wong. Smith was not prosecuted.

### Smith Dismisses Four Claims

After receiving WSI's motion to strike, Smith dismissed, without prejudice, her causes of action for defamation, malicious prosecution, and abuse of process.

### Smith's Opposition

Smith asserted that WSI's motion became moot when she dismissed claims arising from WSI's report to law enforcement. She contended that the remaining claims do not arise from protected activity. They relate to FEHA violations, wrongful termination in violation of public policy, and emotional distress. She argued that the "theft incident on the job is but an ancillary component of [her] work experience" at WSI and "the gravamen of the complaint" is gender discrimination, harassment, and retaliation.

Attached to Smith's opposition is her claim to the state Department of Fair Employment and Housing on May 30, 2019. The claim states that WSI took adverse action on June 14, 2018, by terminating her based on "ancestry, sex/gender," for complaining about violations of rules, policies, procedures, and law, and due to harassment, discrimination, and retaliation.

Smith declares that she was arrested for grand theft in July 2019. She was not prosecuted but the arrest affects her work opportunities. She states on information and belief that—relative to male employees—female employees are not promoted or equally paid; female employees were criticized more harshly, looked down upon, spoken to in a negative and derogatory way, made to feel weak, helpless, and valueless, and not treated with respect and dignity. Smith's male coworkers were not subject to

6

the same level of scrutiny during WSI's theft and fraud investigation, and Smith believes she is the only female who was terminated.

### *Appellants' Reply*

Appellants observed that Smith concedes that four of her claims fall within the anti-SLAPP statute. They argued that her remaining claims are similarly premised on WSI's protected activity of reporting suspected fraud and theft. Moreover, Smith did not carry her evidentiary burden of proving a probability of prevailing with admissible evidence. She did not recite facts showing she was harassed, or that WSI discriminated or retaliated against her.

### *The Trial Court's Ruling*

At the hearing on WSI's motion to strike, the court stated that WSI's report to the police was protected activity; however, it concluded that the anti-SLAPP statute does not apply to Smith's claims of discrimination or wrongful termination. The court acknowledged that she did not allege facts about harassment, gender discrimination, or bias.

The court granted WSI's motion in part, striking Smith's causes of action for defamation, abuse of process, and malicious prosecution. It ordered Smith to file an amended pleading removing allegations relating to WSI's report to law enforcement. The court denied WSI's motion as to Smith's FEHA claims, wrongful discharge, retaliation, and emotional distress, finding they did not arise from protected activity.

WSI and the individual defendants appealed. Smith did not cross-appeal the order striking four of her claims.

## DISCUSSION

### 1. **Appeal and Review**

Appeal lies from an order granting or denying an anti-SLAPP motion. (§ 425.16, subd. (i).) Review is de novo. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis*).) We independently review the record to determine if challenged claims arise from protected activity. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

The anti-SLAPP statute is "construed broadly." (§ 425.16, subd. (a); *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735.) We examine "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Baral, supra,* 1 Cal.5th at pp. 384–385.)

### 2. **Forfeited Claims**

Smith did not cross-appeal the ruling striking her claims for defamation, malicious prosecution, and abuse of process. The court found that WSI's report to law enforcement is protected activity. (See, e.g., *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569–1570 [defendant's report to police that plaintiff abused children falls within § 425.16]; *Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, 1511–1512 [defendant's report to police that a therapist touched her inappropriately was protected activity, though no criminal charges were filed].) By failing to

8

appeal, Smith forfeited her right to argue that claims arising from WSI's report to the sheriff were improperly stricken.

### 3. Two-Step SLAPP Analysis

A plaintiff cannot maintain a cause of action arising from any act in furtherance of the constitutional right of petition or speech in connection with a public issue. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) The statute applies to any statement made in a legislative, executive, judicial or other official proceeding and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech" in connection with a public issue or matter of public interest. (§ 425.16, subd. (e).) The weeding out process is deployed if a complaint alleges both protected *and* unprotected activity. Offending allegations arising from protected activity must be stricken. (*Baral, supra,* 1 Cal.5th at pp. 393–396.)

Our analysis requires two steps. The defendant has the initial burden of showing that a claim is based on protected activity. Once this showing is made, the second step shifts the burden to the plaintiff to demonstrate a probability of prevailing on the claim. We determine whether the plaintiff's showing is legally sufficient and factually substantiated, so as to sustain a favorable judgment if accepted by a trier of fact. "If not, the claim is stricken." (*Baral, supra,* 1 Cal.5th at p. 396.)

#### a. *WSI's Initial Burden of Showing that Smith's Claims Arise From Protected Activity*

Our focus at the initial stage "is not on the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92; *Baral, supra,* 1 Cal.5th at p. 393

9

[statute is "designed to shield a defendant's constitutionally protected *conduct* from the undue burden of frivolous litigation"].) The defendant must make a threshold showing that its acts were in furtherance of its rights of petition or free speech in connection with a public issue. The illegitimacy of the protected conduct "must be resolved as part of a plaintiff's secondary burden to show the action has 'minimal merit.' " (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 314, 319–320.)

1. Claims Arising From WSI's Investigation and Report of Employee Criminal Activity

By voluntarily dismissing four of her claims and failing to appeal the court's ruling against her, Smith has conceded that *some* of her claims—relating to WSI's report to law enforcement —arose from protected petitioning activity. The court correctly found that "the report to the Sheriff's department, and all allegations of police activity, are protected activity."

We part ways with the trial court with respect to WSI's investigation of a theft ring among employees to prepare a report to give to the sheriff. The court deemed the "investigation before they reported to the police" to be unprotected activity under section 425.16. We disagree.

An investigation designed to bring illegal activity to the attention of government officials is protected activity. " '[C]ommunications preparatory to or in anticipation of the bringing of an action or other official proceeding are . . . statements . . . entitled to the benefits of section 425.16.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [defendant's counseling of a tenant regarding her landlord's conduct "apparently was in anticipation of litigation"]; *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 710–711 [defendant's alleged conspiracy to fabricate child abuse evidence

10

was protected activity in advance of making a report to a child protective agency].)

Section 425.16 shelters communications among private individuals in advance of a proposed government complaint if the intent is to expose wrongdoing. In *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777 (*Dove*), a law firm wrote to a group of celebrities regarding its suspicion that Dove, a music publisher, wrongfully withheld money from charities the celebrities had designated as beneficiaries of a recording they made. The law firm intended to petition the Attorney General to investigate Dove. (*Id.* at pp. 779–780.)

Division Four of this district concluded that the letter was protected in two ways. First, by the litigation privilege, which applies to "communications preliminary to a proposed judicial proceeding." (*Dove, supra,* 47 Cal.App.4th at pp. 781–783.) Second, by the anti-SLAPP statute. Though the letter was not made in a legislative, executive, or judicial proceeding or in connection with a matter under official consideration, it raised a matter of public interest and contemplated a government complaint, implicating the right to petition. (*Id.* at pp. 783–785.)

WSI investigated its property loss with the intent to pursue litigation or prosecution. Its report resulted in criminal prosecution. The investigation was *itself* in furtherance of the right of petition. (§ 425.16, subd. (b)(1).) The sheriff questioned Smith and found probable cause to arrest her, though WSI did not accuse her of theft. WSI's conduct is protected: It was designed to prompt action by the sheriff and district attorney. An employer enjoys protection when rooting out defalcation by employees for purposes of making a police report.

11

2. Claims Relating to Gender Discrimination

Smith's complaint alleges numerous FEHA violations. She claims WSI rarely promotes female employees; paid men more than similarly situated females; created a hostile environment for female employees; criticized female employees more harshly; spoke to females in a derogatory tone and distained them; and made females feel undervalued and disrespected. Due to her gender, Smith was allegedly subjected to a hostile environment, harassment, and discrimination at WSI.

Smith's reports of violations of law and company policy resulted in adverse employment actions such as discipline or reprimands, nonpayment of salary or bonuses, demotions, placement in undesirable assignments, and so on. Smith's claims of disparate treatment, hostile environment, and retaliation are not underlain by facts showing the dates, places, or people involved in the alleged FEHA violations. Nonetheless, they are not "extraneous" "trivial" "passing references" as WSI argues.

As weak as Smith's FEHA claims are in her complaint, they survive an anti-SLAPP motion.[2] (*Bonni, supra,* 11 Cal.5th

---

[2] Smith's ability to survive an anti-SLAPP motion does not preclude appellants from demurring to an amended complaint or from seeking summary judgment. Among other things, she must adequately allege—and eventually produce evidence of—pervasive or severe harassment. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 130–131; *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1042–1044 [there is no recovery for harassment that is occasional, sporadic, or trivial]; *Ramirez v. Wong* (2010) 188 Cal.App.4th 1480, 1488 [complaint dismissed that listed "only one instance" of harassment and made conclusory allegations]; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 614 [sustaining demurrers to FEHA

at p. 1012 ["to the extent any acts are unprotected, the claims based on those acts will survive"]; *Verceles v. Los Angeles Unified School Dist.* (2021) 63 Cal.App.5th 776, 785–788.)  They stand apart from WSI's report to law enforcement of criminal activity.

It is not protected conduct to engage in discriminatory, harassing, or retaliatory practices in the workplace.  (*Park, supra,* 2 Cal.5th 1057 [anti-SLAPP statute did not apply to a professor's discrimination claim]; *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 891 [only in a "relatively unusual case" can a defendant accused of retaliation or discrimination meet its first-step burden of showing that its challenged actions qualify as protected activity].)  An employee may maintain a FEHA lawsuit, despite an anti-SLAPP motion, not because discrimination was carried out by means of speech, but because "the defendant denied the plaintiff a benefit, or subjected the plaintiff to a burden, on account of a discriminatory or retaliatory consideration." (*Park*, at p. 1066.)

Smith's discrimination, whistleblower, or retaliation claims do not involve protected activity.  In asserting FEHA claims—and emotional distress and wrongful termination arising from the alleged violation of her civil rights—Smith has not chilled WSI's speech or petitioning rights.  These claims do not meet the first prong of section 425.16.

WSI agrees that Smith's complaint "wove in cursory, nonspecific allegations of *unprotected* activity."  It nonetheless insists that all of Smith's claims are barred because her FEHA claims incorporate by reference allegations of protected activity asserted elsewhere in the complaint.  For example, they

---

sexual harassment and retaliation causes of action because the complaint did not allege pervasive conduct].)

13

incorporate paragraph 14 of the complaint, which alleges that WSI wrongfully "initiated the filing of criminal charges" by reporting a theft ring to the sheriff.

Smith's lawsuit is not doomed by the presence of offending claims among other allegations that are unrelated to protected conduct. To the extent her complaint contains allegations arising from WSI's protected conduct, such as uncovering and reporting an employee theft ring to law enforcement, those allegations must be stricken from the pleading. (*Baral, supra,* 1 Cal.5th at pp. 394–396 [within a cause of action containing both protected and unprotected conduct, offending unmeritorious allegations must be stricken].) As the trial court ordered, Smith must "file an amended complaint which removes the offending allegations and causes of action."

### b. *Probability of Prevailing on the Merits*

A plaintiff must demonstrate a probability of prevailing on her claims to defeat the motion to strike. This requires a showing that " 'the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Oasis, supra,* 51 Cal.4th at p. 820; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) "The prima facie showing of merit must be made with evidence that is admissible at trial. [Citation.] Unverified allegations in the pleadings or averments made on information and belief cannot make the showing." (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289; *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 405.)

### 1. WSI's Investigation to Report Criminal Activity

As discussed above, WSI's report of employee theft was protected activity in anticipation of initiating a government

14

inquiry. The burden shifts to Smith to show a probability of prevailing on her claims regarding WSI's investigative report. If she cannot demonstrate a probability of prevailing on her claim, the court must strike it.

Smith did not demonstrate a probability of prevailing. She makes no showing that WSI's investigation was undertaken in bad faith nor does she deny that it resulted in prosecution. The law protecting privileged communications made in government proceedings or in the initiation of such proceedings applies here. (Civ. Code, § 47, subd. (b).)

An employer's statements to police "concern[ing] the details of [his] investigation and his request that the police conduct further investigation into his suspicions of [an employee's] criminal activity" are absolutely privileged. (*Williams v. Taylor* (1982) 129 Cal.App.3d 745, 753.) "[A] communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, and which communication is designed to prompt action by that entity, is as much a part of an 'official proceeding' as a communication made after an official investigation has commenced" because public policy encourages open communication between citizens and public authorities. (*Id.* at pp. 753–754.) "The privilege *must* extend to actions based on negligent investigation, for if it did not, the privilege for reports to the police would be eviscerated." (*Devis v. Bank of America* (1998) 65 Cal.App.4th 1002, 1008–1009; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 368 [bank customer wrongly detained, handcuffed and searched by police cannot sue for the misbegotten investigation that led to the bank's 911 call].)

Piper spoke to WSI employees while investigating the suspicious loss of four trailers of saleable merchandise and gave

the sheriff her report, including witness statements.  The report led to arrests and prosecution.  (*Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 121–122 [defendant's conduct in hiring private investigators to encourage the city attorney to prosecute the plaintiff is protected by the official proceeding privilege].)  By compiling information to give to the sheriff, WSI furthered "the important public policy of encouraging the reporting of suspected crimes by ordinary citizens."  (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872, fn. 5.)

As a matter of law, Smith cannot prevail because investigating and reporting a suspected crime is absolutely privileged.  (*Hagberg v. California Federal Bank, supra,* 32 Cal.4th at p. 368 [communications "made in *preparation* for or to *prompt* investigation" are privileged]; *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 971–972.)  Smith must extirpate from her pleading allegations regarding appellants' investigation in preparation for contacting the sheriff.[3]

2.  Smith's FEHA Claims

We do not reach the issue of whether Smith is likely to prevail on her claims arising from alleged violations of FEHA (gender-based hostile environment, discrimination, harassment, and retaliation), wrongful termination in violation of public

_____

[3] For example, paragraph 14 of the complaint alleges that WSI "encouraged and initiated the filing of criminal charges and a criminal prosecution of the plaintiff without a scintilla of evidence of any criminal or wrongful acts by the plaintiff during her employment.  As a result of the employer's unfounded accusations, the plaintiff became the subject of criminal prosecution initiated by the filing of a false police report by the employer and its management when there was no evidence of any wrongdoing whatsoever on the part of the plaintiff."

policy, whistleblower and emotional distress claims. To the extent that these claims arise from gender-based misconduct (*not* from WSI's investigation of criminal activity and report to law enforcement), they do not arise from protected activity. They are not subject to a motion to strike under section 425.16, disposing of the need to address whether Smith will prevail on her claims. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80–81.)

## DISPOSITION

We affirm the court's order striking Smith's eighth, ninth, twelfth, and thirteenth causes of action and ordering her to remove from the complaint all references to appellants' report to law enforcement. We affirm the court's order denying appellants' motion to strike Smith's first, second, third, fourth, fifth, sixth, seventh, tenth, and eleventh causes of action.

We reverse the portion of the court's order denying appellants' motion to strike from the complaint claims arising from appellants' privileged conduct in investigating employee theft for the purpose of reporting it to law enforcement and prompting official action on criminal activity.

The case is remanded to the trial court for further proceedings consistent with this opinion. This includes the filing of an amended complaint (a) removing references to theft or fraud investigations and reports and (b) alleging facts sufficient to give appellants notice of incidents of gender-based discrimination, harassment, hostile environment, whistleblowing, and wrongful termination in violation of public policy.

17

The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


                                                    LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.